LEMMON, Judge.
This litigation began with a petition by plaintiff, a tenured school teacher, asserting two cumulated actions against the Orleans Parish School Board, both claims allegedly resulting from an accident which occurred on the job on May 15, 1972. Each claim will be discussed separately.

Salary Differential Claim

Plaintiff’s claim for salary differential is based upon R.S. 17:1202, which provides in pertinent part:
“Parish school boards are prohibited from deducting any amount whatsoever from a teacher’s salary, in case of absence, unless a substitute teacher was employed and actually served, during such teacher’s absence; and only such amount may be deducted as was actually paid to the substitute teacher. * * * ”
The parties stipulated that after the accident plaintiff was absent from her regular teaching duties from May 26, 1972 to February 16, 1973, that her salary for that period would have been $7,410.00, and that she received $4,918.00 in salary and workmen’s compensation.[1]
The Board employed a substitute teacher to replace plaintiff during her absence and paid the substitute $20.00 per day for 103 days, or a total of $2,060.00. However, under Board policy a substitute teacher who remains in the same position for more than 20 days receives advanced pay for the entire period of substitution in that position, the increase being calculated on the basis of the substitute’s experience and education. Accordingly, the Board in April, 1973 paid plaintiff’s substitute an additional $2,761.25 in retroactive adjustment.[2] Thus, plaintiff’s substitute was paid a total of $4,821.25 for service during her absence.
The narrow issue on appeal is whether the Board was entitled to deduct the retroactive adjustment pay, plaintiff contending that the statute contemplates payment of a substitute at the day-by-day rate.
*1004 Although plaintiff was unaware of the retroactive adjustment pay policy for long-term substitute teachers and the personnel handbook contained no reference, to this policy or to a distinction among substitute teachers, the Board introduced Board meeting minutes, interdepartmental memoranda, and testimony showing the existence and implementation of the policy for over 20 years. Considering this evidence of a reasonable policy apparently designed to promote quality replacement for a teacher in a long-term absence and the proof that the Board actually paid plaintiff’s substitute the sum of $4,821.25 for that service, we conclude that the Board was entitled to deduct that amount from her salary for the period of absence. The difference between plaintiff’s normal salary for the period ($7,410.00) and the amount properly paid to the substitute ($4,821.25) is $2,588.75, and the Board paid plaintiff in excess of $3,000.00 in salary, in addition to compensation benefits. Therefore, plaintiff’s claim for salary differential was properly dismissed.

Medical Expenses Claim

Plaintiff’s second claim is for medical expenses under the workmen’s compensation act. She was paid all weekly compensation benefits due from May 26, 1972 through February 16, 1973. The Board’s answer denied, for lack of sufficient information to justify a belief, that the claimed expenses were related to an injury on the job.[3]
Plaintiff testified that she tripped over some choir robes on May 15, 1972, that she reported the accident (a statement not contradicted by the assistant principal), and that she worked two or three more days until the pain in her back became so severe as to require her to seek medical attention.
She consulted an orthopedic surgeon on May 18, 1972, relating the history of the work-related accident. The doctor’s provisional diagnosis was an acute intervertebral disc injury, and he hospitalized her for a period of 39 days because of back pain which radiated into the right leg. The hospital records show a regimen of bed rest and medication, with gradual ambulation and physical therapy, all associated with complaints of back and leg pain. A myelo-gram performed on June 13 was negative. After some relief was achieved, she was discharged on July 5, ambulating in a corset.[4]
The hospital bill for this period of confinement was $3,405.05, and the orthopedist’s bill was $449.00.[5] The doctor testified that his treatment and the hospitalization were prescribed because of the complaints referable by history to the May 15 accident.
The record does not explain why the Board did not pay plaintiff for the hospital bill and the orthopedist’s bill, which the Board admitted receiving on April 30, 1973. However, the record overwhelmingly establishes that these medical expenses in the amount of $3,854.05 were incurred as the result of the reported occupational injury, and there is no suggestion to the contrary.[6] While the Board correctly points out that the intervenor (a hospitalization insurer who attempted to recover medical expenses paid to plaintiff, on the basis that the policy excluded coverage for occupational injuries) presented most of the evidence relating the *1005 expenses to an occupational injury, that evidence constitutes part of this record, and plaintiff certainly should not have been required to prove what the intervenor had already proved.

Intervention

Plaintiff’s husband’s group hospitalization insurer had paid $2,435.08 of the medical expenses discussed above. After plaintiff filed this suit alleging an occupational injury, the insurer intervened, attempting to recover the amount of the payment on the basis that the policy excluded coverage for occupational injury.[7]
The exclusionary provision of the policy recited:
. . The Association shall not be required to furnish the Subscriber or Dependent any services and benefits for: “(1) Charges incurred because of (a) injury occurring while performing any act or thing pertaining to any occupation or employment for which the Subscriber receives remuneration or profit, or (b) any disease for which benefits are payable in whole or in part due to the provisions of any workmen’s compensation law or any legislation of similar purpose. * * * ” (Emphasis supplied)
Also pertinent to this determination are the following definitions:
“SUBSCRIBER means every active, full time employee of the Employer. DEPENDENTS mean the Subscriber’s spouse and all unmarried, dependent children.”
The insurer bears the burden of proving exclusions from coverage, and when such exclusions are subject to more than one reasonable interpretation, the interpretation most favorable to the insured must be applied.
Subsection (1) of the exclusion in this case is divided into two categories, one pertaining to injury and the other to disease. Subsection (1)(a) excludes coverage for an injury in an occupation for which the Subscriber (here, plaintiff’s husband) receives remuneration or profit. Plaintiff’s husband worked at Maison Blanche, a department store; however, plaintiff sustained the injury while performing an act in the employ of the Orleans Parish School Board, for which she received remuneration. Thus, the remuneration for the occupational act during which injury occurred was received by plaintiff, a Dependent, not her husband, the Subscriber.
We conclude it is reasonable to interpret the exclusion as inapplicable to the injury sustained by plaintiff while performing an act in her employment, since the clear language of the contract makes the exclusion applicable only to employment for which the Subscriber receives remuneration. Two additional considerations fortify this conclusion. First, the policyholder, Maison Blanche, was liable by statute for compensation benefits and medical expenses if plaintiff’s husband was injured on the job. Since this liability was covered by other insurance or was self-insured, exclusion of medical expenses for a work-related injury sustained by him results in a lesser risk coverage to the insurer (and presumably a better premium structure to the policyholder who usually pays all or part of fringe benefit premiums) by elimination of a risk covered elsewhere by Maison Blanche. This consideration does not apply to an occupational injury sustained by plaintiff.
Second, Subsection (1)(b)’s language is broader and would clearly exclude an occupational disease contracted by either the Subscriber or a Dependent, but by its explicit terms the subsection applies only to a disease and not to an injury. This clear *1006 distinction in coverage language suggests purposeful strictness in the language in Subsection (1)(a), pertaining to injury.
Finally, intervenor argues that in a community, property state plaintiff’s husband did receive remuneration for her occupational acts. While we do not ascribe much merit to this argument, we note the absence of proof that plaintiff and her husband were living together at the time of the injury or thereafter. See C.C. art. 2334.

Decree

The judgment of the trial court is reversed, and judgment is now rendered in favor of plaintiff and (1) against defendant in the sum of $3,854.05, plus legal interest from April 30,1973, and (2) against interve-nor, dismissing the petition of intervention. All costs in both courts are to be assessed equally against defendant (to the extent allowed by law) and intervenor.

REVERSED AND RENDERED.

ON APPLICATION FOR REHEARING
Our original opinion, holding that Mrs. Chesky proved the medical expenses of $3,405.05 for Touro Infirmary and $449.00 for Dr. Phillips were caused by an employment accident, was based on evidence in this record. In its application for rehearing the Orleans Parish School Board points out that during presentation of the evidence in chief, Mrs. Chesky’s counsel, while not abandoning her claim for medical expenses under the workmen’s compensation act, stated his belief that he would not be able to produce evidence to support the claim that the expenses were caused by an accident on the job.[1] The Board accordingly contends that it relied on this statement and did not attempt to rebut intervenor’s evidence of causation, because it was not a party adverse to intervenor.
While we are disinclined to remand cases unless it is absolutely necessary, and while we further believe that all of the evidence in support of multiple demands should generally be considered when the demands are not severed for purpose of trial (since it would be rather useless to require one party to produce evidence which has already been produced by another party), we believe that fundamental fairness in this particular ease requires that the School Board be allowed an opportunity to present evidence it reasonably failed to produce at the trial of this matter. We will therefore remand the case for the purpose of allowing the Board to produce evidence bearing on causation of the medical expenses awarded in our original judgment and for either party to produce additional evidence on these points. However, plaintiff should be precluded from attempting to introduce evidence as to any other medical expenses, inasmuch as she had complete opportunity to do so at the trial of this matter.
Accordingly, the application for rehearing by the Orleans Parish School Board is granted, and it is ordered that the case be remanded for evidence consistent with this opinion.

APPLICATION OF DEFENDANT GRANTED IN PART.

CASE REMANDED IN PART FOR FURTHER PROCEEDINGS.

. Compensation payments, according to the petition, amounted to $1,822.80. Under Board policy a tenured teacher injured on duty is paid full salary, minus workmen’s compensation, for 90 days and thereafter is paid only compensation benefits.

. The total amount due was calculated on the basis of $41.75 per day for the 103 days of absence plus holidays (since a long-term substitute is paid for holidays, while a day-by-day substitute is not). The payment of $2,761.25 represents the difference between the total amount due and the amount previously paid at the day-by-day rate.

. The Board also filed an exception of prescription, but suit was filed on February 13, 1974, within one year of the date of last payment of benefits. R.S. 23:1209; Brown v. Travelers Ins. Co., 247 La. 7, 169 So.2d 540 (1964); Ancelet v. Moreno’s Air Conditioning, Inc., 331 So.2d 127 (La.App. 3rd Cir. 1976).

. Plaintiff did not return to work until February, 1973, but the record contains no evidence of medical treatment after the July, 1972 discharge from the hospital, except for two office visits to the orthopedist later that month.

. There was also a bill in the record for hospital consultation by a specialist in internal medicine, but plaintiff had been consulting this doctor for some time prior to the accident, and neither plaintiff’s testimony nor the hospital records related this consultation to the complaints arising out of the accident. Furthermore, there was no evidence connecting the drug bills in the record to the accident.

. Indeed, the trial court, by ruling in favor of the intervenor, had to find that the expenses were related to an occupational injury.

. There was also an intervention filed by the succeeding hospitalization insurer. The trial court originally rendered judgment in favor of that insurer, but modified the judgment at the hearing on plaintiff’s application for new trial and dismissed that intervention. While that insurer did not appeal, the record does not show that the insurer’s attorney was present at the hearing or was notified of the amended judgment, and we specifically decline to review that portion of the judgment or to declare that portion has acquired the authority of the thing adjudged.

. Indeed, the evidence of causation was primarily presented by the intervenor.