The **PRUDENTIAL INSURANCE COMPANY OF AMERICA**, Appellant,

v.

Jean F. **ROBERTS**, Appellee.

No. 22388.

United States Court of Appeals
Fifth Circuit.

March 29, 1966.

James A. Dixon, Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, Fla., for appellant.

James J. Boyle, Boyle & Boyle, Miami, Fla., for appellee.

Before JONES and BROWN, Circuit Judges, and BREWSTER, District Judge.

JOHN R. BROWN, Circuit Judge:

This case involves the extent of Prudential's monetary liability on a group life insurance policy issued to Eastern Airlines covering its pilots, among whom was Appellee's husband. Not a single identifiable significant question of law is present. And the facts are neither complex nor conflicting.

In 1961 Prudential issued a group policy to Eastern covering the lives of its pilots, with "basic" benefits of $50,000 and "additional" benefits depending on the employee's annual earnings. It is the amount of these "additional" benefits which is here in dispute. During the calendar year 1962, the Assured's earnings were of an amount which entitled him to $17,500 "additional" insurance during 1963. His earnings for 1963 were of an amount which would entitle him to $40,000 "additional" insurance, but it was only upon the completion of his last flight on December 26, 1963, that his earnings reached this amount. He died a few days after on January 2, 1964. The question here is whether his death on January 2, 1964, entitles his beneficiary to additional benefits of $40,000.

The answer would be clear were it not for Eastern's system of payroll accounting and "classification" of employees under the group policy, all being done, however, with Prudential's knowledge and apparent acceptance. Eastern pays its pilots at the end of each month for services performed during the preceding month. But it deducts from each check the employee's contribution, due in advance for the succeeding month, for "basic" and "additional" benefits under the group life plan. Since the amount of "additional" insurance depends on the pilot's calendar year annual earnings and since on January 31 the payroll check for the last month (December) of the preceding calendar year is issued, Eastern adopted the practice of "reclassifying" its pilots on February 1 of each year for the purpose of determining the amount of "additional" insurance available to them for that year. Prudential contends that since the Assured died on January 2, 1964, prior to the February 1 reclassification date, he is entitled to only the "additional" insurance ($17,500) applicable to his February 1, 1963, classification based on his 1962 annual earnings, though had he survived February 1, 1964, he would be entitled to reclassification and "additional" insurance ($40,000) based on his 1963 annual earnings including his January 31 paycheck for work performed during December 1963.

In light of the terms of the policy and the applicable state law, we affirm the District Court's summary judgment for the latter, greater amount. Although the group policy issued to Eastern provides that "the classification of each individual Employee shall be determined by the Policyholder from time to time without discrimination among persons in like circumstances, and such determination shall be final and conclusive," the certificate, issued to the Assured and controlling on the extent of his individual coverage,[1] clearly provides that the

---

1. The group policy provides that "the company will issue * * * to each Employee * * * an individual certificate setting forth the insurance protection to which such Employee is entitled." This is in accordance with the general rule, 1 Appleman, Insurance Law and Practice § 46, at 68–70, and Fla.Stat.Ann. § 627.-0414. Without discussing in any depth the question of which State's laws should be applied in this case, both parties rely on Florida law and concede, in any case, that the insurance laws of other states which might apply are similar to those of Florida.

amount of insurance "shall be adjusted automatically to conform" to the annual earnings of the insured-employee,[2] and, indeed, Florida law provides that "[t]he amounts of insurance under the [group] policy must be based upon some plan precluding individual selection * * * by the employer."[3] This all points away from a construction which makes an employee's coverage dependent upon a "reclassification" date (not referred to in the certificate or policy) selected by Eastern, and acquiesced in by Prudential, for bookkeeping and administrative convenience. This is especially true in light of the system envisaged by the insurance contract and the conceded fact that Eastern and Prudential, which had access under the policy to all of Eastern's records, were immediately aware of the Assured's daily earnings as reflected in detailed flight sheets and employee pay statements prepared monthly. As of December 31, 1963, it was neither impossible nor impracticable for either Eastern or Prudential to determine that the Assured had earned enough during 1963 to entitle him to $40,000 "additional" insurance.

■ Prudential's primary argument for a lesser amount is that the Assured had never paid the premium by means of deduction from his monthly pay check for the $40,000 coverage. But the policy construed in the light of general insurance principles lends no support to this argument. Although this insurance was a non-contributory plan in which the employer did not ultimately bear any portion of the premium cost and all premiums were ultimately to be borne by covered employees, the structure reflects positively that it rested on Eastern's credit. Prudential required, of course, that the full premium for all of the assureds be paid for the policy year. But Eastern had the sole obligation to pay the proper premiums to Prudential,[4] and

---

2. The certificate on page one indicates that the Assured had basic and additional insurance (under Columns A and B), and that the amount of insurance that he was entitled to was "To be determined by the Table of Amounts on the last page of the Certificate."

The last page of the certificate in turn reproduces from the master policy the following schedule:

"Classification

| "All Employees according to annual earnings as follows: | Column A | Column B |
|---|---|---|
| "22,500 or more but less than 25,000 | 50,000 | 17,500 |
| "25,000 or more but less than 30,000 | 50,000 | 25,000 |
| "30,000 or more but less than 35,000 | 50,000 | 40,000" |

Immediately below this classification of all employees according to annual earnings is the following highly significant provision:

"If the Employee's classification *changes* to one for which a larger amount of insurance is provided, the Employee's amount of insurance under Column A (and under Column B, if Column B is applicable to the Employee) shall be adjusted *automatically* to conform to the new classification *on the first day on which he is actively at work on full time.*" (emphasis supplied).

There is then immediately thereafter a provision that if the employee's classification changes to one for which a *lesser* amount of insurance is provided, there is no automatic decrease of coverage, but the employee must make written request therefor of the employer.

---

3. Fla.Stat.Ann. § 627.0401(4). As to the applicability of Florida law, see note 1, supra.

4. Under the policy Eastern was obligated to pay monthly premiums. Each monthly premium was determined by multiplying the average monthly premium rate per $1000 in effect for the policy year (June 1 to June 1) by the total amount of insurance in force under the policy on the

there is no contention that it has failed to do so. The manner in which Eastern chose to collect contributions from each employee was left to its discretion as a matter of administrative and bookkeeping convenience, and as long as Eastern properly paid the premiums on the master policy, Prudential could not deny coverage on the ground that Eastern had failed to deduct the proper contribution from its employees' paychecks [5] the moment a change in the earnings bracket or status of an assured employee triggered an increase in the premium. Indeed, the argument revealed that there was no machinery or procedure either established or required under the contract terms prescribing the time or manner in which these shifting events and increased premium costs are to be reported and paid.

Affirmed.

---

due date of each monthly premium. The average monthly premium rate per $1000 for any policy year was to be calculated upon the basis of attained ages, nearest birthday, of the employees insured under the policy on the first day of the policy year (June 1) and the individual amounts of insurance at that time. Thus, nothing in this formula, and the essential machinery for its effectuation, for determining the premiums payable to Prudential gives crucial significance to the February 1 "reclassification" date chosen by Eastern.

Prudential relies heavily on the following policy provision:

"5. If the classification of an Employee insured for additional insurance changes to one for which a larger amount of additional insurance is provided, the Employee's additional insurance shall be adjusted automatically to conform to the new classification on the first day on which he is both actively at work on full time and *makes a contribution applicable to the new classification*." (Emphasis added.)

The italicized phrase supports Prudential's position because the Assured admittedly never made a contribution applicable to the $40,000 "additional" insurance classification. There are at least two reasons why this is not decisive. First, this phrase does not appear in the certificate (note 2, supra) which is controlling on the extent of the Assured's coverage (note 1, supra). Second, and more important, under this structure which recognized that the employee would never—simply never—make the premium payment himself and that it would be made on his behalf by the employer under the administrative procedure for periodic, but subsequent, reports, the "day" for the added premium payment is not the day on which it is paid, but the date specified or otherwise indicated by the employer in the subsequent report.

5. "So far as premium payments are concerned, since the employer * * * assumes full liability for the collection of premiums and forwarding them to the insurer, the employee has no personal liability therefor. * * * [T]he burden rests upon the insurer at all times to prove nonpayment to it in order to defeat a claim for loss under the policy." 1 Appleman, Insurance Law and Practice § 47, at 72–73.