321 So.2d 416 (1975)
Marguerite M. COLVIN, Plaintiff-Appellant,
v.
LOUISIANA HOSPITAL SERVICE, INC., Defendant-Appellee.
No. 12680.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1975.
Rehearing Denied November 6, 1975.
Writ Refused December 19, 1975.
*417 Mayer, Smith & Roberts by Jerry Kircus, Shreveport, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for defendant-appellee.
Before PRICE, DENNIS and MARVIN, JJ.
En Banc. Rehearing Denied November 6, 1975.
DENNIS, Judge.
This case presents the question of whether a coordination of benefits clause contained in a group health and accident insurance master policy may be asserted against a contributing member of the group despite the fact that the member was not informed by her certificate of insurance or otherwise notified that the master policy contained such a provision.
Plaintiff, Marguerite Colvin, was hospitalized from April 11, 1973 through April 23, 1973 for surgery. Among other expenses, she incurred a hospital charge of $985.26. She filed a claim based on this charge under two different insurance contracts.
Mrs. Colvin's husband had been a member in good standing of the Bakery and Confectionery Union at the time of his death on May 1, 1972. As a result of a union negotiated contract, she, as his widow, was entitled to medical benefits for a period of one year following his death payable by the Bakery and Confectionery Union and Industry International Welfare Fund, hereafter referred to as "Bakery Fund". Pursuant to this agreement, the Bakery Fund paid plaintiff $794.66 as a consequence of the hospital charge.
Plaintiff, as an employee of Willis-Knighton Hospital, was also an insured under a policy of group insurance issued to plaintiff's employer by defendant, Louisiana Hospital Services, Inc., now Louisiana Health and Service Indemnity Company, hereafter referred to as "Louisiana Health".
The master policy issued to Mrs. Colvin's employer by Louisiana Health contained a rider bearing the title "Coordination of Benefits". The rider provided that any medical expense, for which insurance was not otherwise excluded, would be paid "to the extent that such item is not covered completely under the other `plan'". The term "plan" was defined in the master policy as including "any coverage under labor-management trusteed plans, union welfare plans, employer organization plans, or employee benefits organization plans."
The only indication of coverage provided Mrs. Colvin by Louisiana Health was a certificate of insurance booklet. The booklet provided that it was intended as a brief summary of the group health plan, that it was prepared for the purpose of presenting general information, and that it was not a substitute for the master policy. The coordination of benefits rider was not mentioned in the certificate of insurance booklet. In fact, it is undisputed that Mrs. Colvin was not notified of the coordination of benefits rider until after she had paid her employee portion of premiums and had incurred the medical expenses at issue in this case.
*418 Relying on the coordination of benefits rider in the master policy, Louisiana Health denied in part Mrs. Colvin's claim because of the payment to her by the Bakery Fund of $794.66 based upon the same hospital charge. Louisiana Health paid her only $190.60 of her claim based on the hospital charge, which was the portion of the hospital charge not covered under the Bakery Fund plan.
It has been stipulated by the parties that Mrs. Colvin incurred $1,512.76 in actual medical expenses, including the hospital charge, as a result of her surgery, and that she was paid $1,275.66 by the Bakery Fund and $586.10 by Louisiana Health in response to claims based on these medical expenses. Therefore, Mrs. Colvin was paid $349.00 in excess of her actual medical expenses by the two insurers.
Mrs. Colvin brought this suit against Louisiana Health for payment of the entire amount claimed as a consequence of the hospital charge, plus an equal amount as penalty for arbitrary and capricious refusal to pay without probable cause, and $2,500 as a reasonable attorney's fee. Louisiana Health reconvened for recovery of excessive benefits paid under its policy. The trial court rendered judgment rejecting plaintiff's claim and awarded defendant $333.00 on its reconventional demand. Plaintiff appealed, and for the reasons hereinafter assigned we reverse.
Defendant relies on the following language in the certificate of insurance booklet: "This booklet is distributed for purposes of presenting general information only. Its contents are not to be accepted or construed as a substitute for the provisions of the Master Contract."
Louisiana Health argues that the provisions of the master policy prevail because, under the quotation above, the insurance extended to Mrs. Colvin was specifically subject to the provisions of the master policy. We do not agree, however, that the master policy prevails under these circumstances.
The Louisiana Insurance Code, La.R.S. 22:215, in pertinent part, requires an insurer issuing group health and accident insurance to issue to the employer for delivery to the insured employee "an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable." Louisiana Health points out that the statute does not contemplate or require a "full" statement of everything that is in the group policy to which the certificate is an adjunct. However, the purpose of the section is to provide persons insured under group policies with information regarding the coverage afforded. Undoubtedly only an accurate and informative statement will satisfy the statutory requirement. To hold that a description of coverage which omits a significant limitation on that coverage is adequate would thwart the legislative purpose.
In cases involving statutory, master policy, and certificate provisions very similar to those involved here, the California and Wisconsin Supreme Courts held that the provisions of the certificate prevailed. Humphrey v. Equitable Life Assurance Society of America, 67 Cal.2d 527, 63 Cal. Rptr. 50, 432 P.2d 746 (1967); Riske v. National Casualty Company, 268 Wis. 199, 67 N.W.2d 385 (1954). In the California case the certificate's ambiguous provisions were construed against the insurer so as to afford full life insurance coverage to a disabled employee, assuming arguendo that the provisions of the master policy clearly would have defeated his rights to full coverage. In the Wisconsin decision, the master policy afforded medical benefits only to the "wife" of an employee, whereas the certificate stated that such benefits were payable to the "spouse".
We agree with these decisions in which the courts rejected the insurer's argument that the certificate may misrepresent the insurance protection without redress so long as it refers the holder to the master policy. Under such an emasculation of the statute as urged by the insurer the representations *419 of the certificate would merely set a trap for the insured. If the statute is to be credited with any efficacy the insured is entitled to rely on the certificate which the law requires the insurer to give him, at least insofar as the certificate purports to deal with those subjects which the statute commands it to cover, viz., the insurance protection to which he is entitled and to whom payable.
It is true that the California and Wisconsin courts dealt with cases in which the terms of the certificate conflicted with the provisions of the master policy, rather than with a failure to note a significant limitation on coverage as in the instant case. The insured employee, however, is no less misled by the lack of notice of a significant limitation upon his insurance coverage than by an inaccurate description of it.
Although there are some decisions contrary to the holding of the Humphrey and Riske cases, Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 203, 57 S.Ct. 686, 81 L.Ed. 1036 (1937); Chrysler Corporation v. Hardwick, 299 Mich. 696, 1 N.W.2d 43, 45 (1941); Germain v. Aetna Life Insurance Co., 285 Mich. 318, 280 N.W. 773, 776 (1938); Seavers v. Metropolitan Life Insurance Company, 132 Misc. 719, 230 N.Y.S. 366, 370 (1928), the weight of authority holds that the terms of the certificate are binding on the insurer. Prudential Insurance Company of America v. Roberts, 358 F.2d 394, 395-396 (5th Cir. 1966); John Hancock Mutual Life Insurance Company of Boston, Mass. v. Dorman, 108 F.2d 220, 222 (9th Cir. 1939); Clauson v. Prudential Insurance Company of America, 195 F. Supp. 72, 78-79 (D.C.Mass.1961); United Security Life Insurance Company v. Harden, 275 Ala. 169, 153 So.2d 246, 247 (1963); Missouri State Life Insurance Company v. Foster, 188 Ark. 1116, 69 S. W.2d 869, 870 (1934). This result is easily justified upon the ground that the individual certificate is the only document which the employee sees or is given at any time and that the insurer, who drafts the instrument in language it selects, cannot thereafter complain that it does not express the intention of the parties. Humphrey v. Equitable Life Assurance Company of America, supra. 1 Appleman, Insurance Law and Practice, 68-70 (1965).
This view, furthermore, is compatible with the general rules of contract construction set forth in our Civil Code:
"Art. 1797. Necessity for consent; proof
"Art. 1797. When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This being a mere operation of the mind, can have no effect, unless it be evinced in some manner that shall cause it to be understood by the other parties to the contract. To prevent error in this essential point, the law establishes, by certain rules adapted to the nature of the contract, what circumstances shall be evidence of such consent, and how those circumstances shall be proved; these come within the purview of the law of evidence."
* * * * * *
"Art. 1958. Interpretation against party responsible for doubt
"Art. 1958. But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."
See the concurring opinion of Judge Miller in Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App., 3d Cir. 1970) in which the court addressed a similar problem arising out of a limitation on the aggregate amount of coverage afforded by a group life insurance policy *420 which was not noted in the certificates issued to the insured.
The Louisiana Insurance Code, La.R.S. 22:657, provides that failure to pay claims arising under health and accident contracts within thirty days of the date upon which proof of claim is furnished shall subject an insurer to a penalty of double the amount of the benefits due and reasonable attorney's fees, unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. As set forth in the stipulation of the parties, defendant received on May 1, 1973 the proof of claim form attached to the stipulation and no payment was made on the claim based on the hospital charge until September 9, 1973. At that time plaintiff was belatedly paid $190.60. In view of the inconsistency between the certificate and the master policy, the division of authorities in other jurisdictions, and the lack of a definitive decision in Louisiana, we conclude Louisiana Health had reasonable grounds for its delay in payment based upon the coordination of benefits rider. But defendant has offered no evidence informing us of any reasonable basis for its excessive delay in payment of the $190.60 which it conceded was due under the master policy. Therefore, plaintiff is entitled to a penalty of this amount because of the tardy payment. We will not assess attorney's fees against the insurer, however, because the payment was made well in advance of the filing of plaintiff's suit, and it has not been demonstrated that legal services were necessary to its inducement.
For the foregoing reasons the judgment in favor of Louisiana Health and against Mrs. Colvin is reversed and judgment is rendered in her favor in the amount of $794.66, as recovery of insurance benefits due, and $190.60, as recovery of a statutory penalty, with legal interest thereon from date of judicial demand, and all costs of this proceeding.
Reversed and rendered.