357 So.2d 1170 (1978)
Candace J. DAVEY
v.
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY.
No. 8743.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1978.
On Rehearing February 14, 1978.
On Rehearing March 14, 1978.
Writ Refused May 5, 1978.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, David W. Oestreicher, II, Warren M. Schultz, Jr., New Orleans, for defendant-appellant.
Arnold & Giepert, Richard J. Arnold, New Orleans, for plaintiff-appellee.
Before GULOTTA, BEER and BOWES, JJ.
Per Curiam On Rehearing February 14, 1978.
*1171 BEER, Judge.
Appellee Candace J. Davey, an employee of D. H. Holmes, Ltd., was an insured under the company's group health insurance policy administered by appellant, Louisiana Health Service & Indemnity Company, a/k/a Blue Cross of Louisiana (hereafter, "Blue Cross"). She underwent maxillofacial surgery performed by John Kent, D.D.S., an oral surgeon. Dr. Kent had previously diagnosed her condition as mandibular retrognathia (a lack of growth of the lower jaw) and maxilla hyperplasia (an overgrowth of the upper jaw). To correct this condition, Dr. Kent performed osteotomies, which required the controlled fracturing of the jaws and resetting, with a bone graft in the lower jaw. The surgery was performed under general anesthesia, in the course of which Dr. George Byram, an orthopedist, simultaneously removed a section of the patient's hip bone for the grafting.
Appellee made a claim for the expenses incurred, including Dr. Kent's bill of $2,450.00. Blue Cross made certain payments by reason of the basic coverage provided in the policy, but denied the bulk of her claim, including Dr. Kent's bill, citing the policy provision which provided:
"Article VIExclusions and Limitations No benefits shall be provided hereunder on account of:
* * * * * *
(5) Dental care and treatments, dental surgery or dental appliances unless such charges are made necessary within ninety (90) days after accidental bodily injury effected solely through external means and occurring while the Subscriber is covered hereunder and limited further to dental treatment of injuries from such accident to natural teeth, including replacement of such teeth and setting of a jaw fractured or dislocated in such accident. (MM-8.) (Emphasis ours.)"
And:
"Article IISupplemental Definitions
* * * * * *
(F) PHYSICIANSURGEON means a duly licensed Medical Doctor (M.D.) legally entitled to practice medicine and surgery in the state in which the service is performed; engaged in the private practice of medicine; and who renders a charge to the Subscriber or Dependent for his professional service.
The term `PhysicianSurgeon' does not include any intern, resident, fellow or others enrolled in a residency training program regardless of any other title by which he is designated or his position on the medical staff of the hospital. A senior resident, for example, who is referred to as an `assistant attending surgeon' or an `associate physician' is considered a resident since the senior year of the residency is essential to completion of the training program.
It is the specific intent and purpose of The Association to exclude reimbursement to the Subscriber for services rendered by an intern, resident, fellow or others enrolled in a residency training program regardless of whether the intern, resident, fellow or others was under the supervision of a physician or regardless of the circumstances under which services were rendered.
The term `PhysicianSurgeon' does not include a practicing medical doctor in the capacity of supervising interns, residents, senior-residents, fellows, or others enrolled in a training program; and further, who does not personally perform a surgical procedure or medical treatment to the Subscriber or Dependents. (MM-4.)"
Davey's suit against the insurer resulted in an award for the full balance of her expenses (subject to $100 deductible and 80% coverage provision). In written reasons, the trial court held that although a Doctor of Dental Surgery had performed the operation, it could have been performed by a Medical Doctor and, did, in fact, require the simultaneous services of an orthopedic surgeon (M.D.). Thus, said the trial court, it was a procedure within the policy coverage.
Blue Cross appeals, contending that the terms of the policy clearly denied coverage. *1172 Appellee answers, seeking attorney's fees and a penalty, as provided by La. R.S. 22:657 (1950), but we find this demand to be without merit in view of the rationale of our opinion as hereinafter expressed.
The chronology of this case, as it relates to recent legislative action, must be addressed: By La. Acts 1974, No. 544, § 1, now codified as La. R.S. 22:213.1 (Supp. 1977), the legislature sought to prevent the refusal of insurance companies to pay claims for surgical procedures by dentists, providing as follows:
"§ 213.1 Applicability of policy to dental care
Whenever the terms `physician' or `medical doctor' are used in any accident and sickness policy, medical service plan, or other contract providing for the payment of surgical procedures which are specified in the policy or contract or are performed in an accredited hospital in consultation with a licensed physician and are within the scope of a dentist's professional license, said terms shall be construed to include a dentist, licensed under the laws of the state of Louisiana governing the practice of dentistry under Chapter 9, Title 37, Louisiana Revised Statutes, who performs such specified procedures. This section shall be applicable only with respect to policies delivered or issued for delivery in this state with an initial inception date on or after July 31, 1974; provided that whenever the carrier of said policy, plan, or contract provides for a dental program therewith, or by a supplementary policy, plan, or contract, then the payment of benefits for the surgical procedures mentioned hereinabove shall be made pursuant to the provisions of the dental program of said carrier."
The effective date of the supplemental agreement of the D. H. Holmes group insurance policy which provided for major medical coverage was September 1, 1969. The initial date of coverage for Candace J. Davey was July, 1973. Therefore, La. R.S. 22:213.1 cannot be here applied.
Equally clear to usnotwithstanding the trial court's written reasonsis the fact that if appellee is to recover, such recovery must be in spite of the clear definitional terms of the master policy.
With this in mind, we turn to the pertinent portion of the record, which indicates:
"Q. When you were working at D. H. Holmes were you given a policy or a copy of your insurance policy?
A. I was given a pamphlet like that (indicating).
Q. Is that the pamphlet that you received from them showing your coverage there?
A. Yes.
Q. And this is dated 4/1/75?
A. Yes, sir.
Q. And this is the insurance policy you had at that time? Is that the only policy that you were given at D. H. Holmes for Blue Cross?
A. That's right.
Q. This is the only indication of the coverage that you had at that time?
A. Yes. That's all that was given out to us. To be sent with our pay checks. That would be sent if something changes.
MR. ARNOLD:
I would like to offer and introduce the document identified by the witness as being a copy of the insurance policy.
MR. OESTREICHER:
I would like to say that I object as far as this being a copy of the policy. This is a document which plaintiff has identified which was given her but I don't think this is a copy of the policy. I believe that's the trial today.
The only copy of the policy that I have seen is the one provided here and this is a pamphlet and if it is to be filed as a pamphlet I would not object but as far as saying it was a policy I would object to it.
MR. ARNOLD:
That was the only policy she was given.
MR. OESTREICHER:
I object to the word `policy.'
THE COURT:

*1173 This is the evidence of the fact that the lady was covered. The Court will accept it on that basis.
MR. OESTREICHER:
There is no identifying name, in particular of her name. I see some handwriting but as far as this being any kind of proof showing she was covered I would object to that because there is nothing on there.
The only name on there is Blue Cross Plan, et cetera.
(Off record discussion.)
THE COURT:
The Court will allow the pamphlet to be placed in the record as testified to by the witness that it was the evidence given to her to show that she's covered by the policy issued to D. H. Holmes. To that limited extent the objection is overruled. Proceed."
The exclusion (of the surgical services of a D.D.S.) is clearly and unequivocably set forth in the definitional section of the master policy itself. However, La. R.S. 22:215 A(3)(g) (Supp.1977), provides, in pertinent part, as follows:
". . . The insurer shall furnish to the policyholder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to notice of claim, proof of loss, time of payment of claim and any other relevant information, including the name and address of the insurer. (Emphasis added.)"
The exclusion section of the pamphlet entitled "Your Blue Cross Plan" does not indicate surgical services of a D.D.S. as being excluded. It provides:
"GENERAL PROVISIONS AND EXCLUSIONS:
The contract does not provide coverage for cases covered by government programs, such as Medicare; Workmen's Compensation or employers' liability laws; rest cures, convalescent, custodial, domiciliary, rehabilitative or sanitaria care, tuberculosis, alcoholism or drug addiction; or treatment in governmental institutions where charges are not customarily made."
The general coverage provisions do not help to clarify the issue. They provide:
"SURGICAL BENEFITS:
Surgical benefits up to $400.00 are paid for all types of surgical operations or for the treatment of fractures and dislocations. The amount of payment is based on the type of operation performed. Maternity benefits are also provided if maternity coverage is in effect. $100.00 is allowed for a normal delivery; $300.00 is allowed for a caesarean section. Payments are made for these services whether performed in a hospital, doctor's office, or home."
And, further:

"MAJOR MEDICAL EXPENSE BENEFITS: (Adult Dependents Not Eligible) Major Medical benefits cover all eligible expenses not provided for under the basic contract as listed herein. After you have incurred $100.00 of expenses not covered under the basic plan within a calendar year, Blue Cross pays 80% of your expenses up to a maximum of $50,000.00 per benefit period/lifetime. Maximum reduces to $20,000.00 at age 65 or when eligible for Medicare, whichever occurs earlier. Automatic Restoration of up to $1,000.00 per year. Mental & Nervous outpatient psychiatric care limited to 50% of `usual and customary' fee, and further limited to 50 visits per year, which includes visits for psychological evaluations when performed by an M.D. (Emphasis ours.)"
Unless the use of the word "eligible" can be said to put one on notice that services of an oral surgeon might not be covered, the pamphlet does not fully comply with the certificate requirements of La. R.S. 22:215 A(3)(g).
If the pamphlet entitled "Your Blue Cross Plan" is considered to be the "certificate of insurance" described in La. R.S. 22:215 A(3)(g), it should be construed together with the master policy. See, e. g., Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App. 3rd Cir. *1174 1970), citing, Austin v. Metropolitan Life Insurance Company, 142 So. 337 (La.App. 2 Cir. 1932), Loubat v. Audubon Life Insurance Company, 248 La. 183, 177 So.2d 281 (1965), and Finch v. Baton Rouge Production Credit Association, 154 So.2d 60 (La. App. 1 Cir. 1963).
Recently, in Colvin v. Louisiana Hospital Service, Inc., 321 So.2d 416 (La.App. 2nd Cir. 1975), writ denied, La., 323 So.2d 476, the insured received a certificate of insurance which did not advise her of a coordination of benefits rider to the master policy, and insured was not advised of such rider until after employee's share of premiums were paid and medical expenses were incurred. The Second Circuit concluded that in such a situation, the terms (or lack thereof) of the certificate of insurance were controlling.
Colvin was questioned in W. S. McKenzie, "Work of the Appellate CourtsInsurance," 37 La.L.Rev. 494, 495 (1977), on the following grounds:
". . . Since the plaintiff was reimbursed for all of her medical expenses and the coordination of benefits provision only prevents double recovery, the significance of the omission in the certificate of insurance booklet is questionable." (Emphasis ours.)
Here, however, there is no issue of double recovery. The problem is one of extent of coverage, or, conversely, extent of exclusion.
On the basis of this record, we are of the view that the pamphlet hereinabove referred to should be considered as the certificate described in La. R.S. 22:215 A(3)(g) and that, as such, it is insufficient and, perhaps, misleading.
In Aetna Insurance Company v. Emmons, 348 So.2d 1267, 1270 (La.App. 4th Cir. 1977), we observed:
"If the insurer in this case intended to require scheduling of rented equipment as a condition of coverage, it should have specifically so stated because limitations on coverage provided in an insurance policy must be clear and express in order to inform the insured he must take special measures to obtain protection. And if ambiguity is created by the words of this endorsement making it subject to the `terms, conditions and exclusions' of the main policy, thus requiring scheduling of property for coverage, the ambiguity was created by the insurer and must be construed against it. (Footnotes omitted.) (Citing, Cooling v. United States Fidelity and Guaranty Co., La.App., 269 So.2d 294; Corkern v. Main Insurance Company, Chicago, Ill., La.App., 268 So.2d 138; St. Paul Fire & Marine Ins. Co. v. Roubion, La.App., 252 So.2d 679.)"
Accordingly, we conclude that the benefit of the doubt created by the wording in the pamphlet should be resolved in favor of Davey and that, on these grounds, the judgment of the Civil District Court for the Parish of Orleans is affirmed, appellant's cost.
AFFIRMED.
PER CURIAM.
Rehearing granted. Counsel for all parties may submit additional briefs by February 21, 1978. Briefs should deal primarily with the applicability or inapplicability of La. R.S. 22:215 A(3)(g) and the applicability or inapplicability of Colvin v. Louisiana Hospital Service, Inc., La.App., 321 So.2d 416. Additional oral argument will be heard on February 28, 1978, at 1:45 p. m., at which time the court will again take the matter under submission.

ON REHEARING
BEER, Judge.
Following the rendition of our original opinion on January 11, 1978, we granted a rehearing on February 14, 1978, received and considered supplemental briefs, and heard further argument by able counsel for both parties on February 28, 1978.
The excellent application for rehearing filed in behalf of Louisiana Health Service & Indemnity Company effectively demonstrated the nonapplicability of La. R.S. 22:215 A(3)(g). We were mistaken in applying it.
*1175 The applicable statute is La. R.S. 22:215 A(1)(a). We must focus on it the same attention that we erroneously applied to La. R.S. 22:215 A(3)(g).
Specifically, we must consider the effect of the following excerpt which provides: "The insurer shall issue to the employer or association for delivery to each employee or member insured under such group policy, an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable." (Emphasis ours.)
The certificate issued to Candace J. Davey contains a paragraph entitled "GENERAL PROVISIONS AND EXCLUSIONS" which is quoted in our original opinion.
Considering the verbiage of the paragraph containing "GENERAL PROVISIONS AND EXCLUSIONS" and the verbiage of the statute, we are compelled to the conclusion that Candace J. Davey could reasonably expect that the surgical procedures which she was obliged to undergo were covered by her policy.
This is a close call, and we are indebted to able counsel for both parties for the diligence exhibited in their presentations to us.
For the reasons noted above, our original opinion is, accordingly, reinstated insofar as it affirms the judgment of the Civil District Court for the Parish of Orleans.
ORIGINAL OPINION AFFIRMED ON OTHER GROUNDS.