LANIER, Judge.
This is a suit in contract seeking monthly disability benefit payments under a group insurance policy and statutory penalties for nonpayment. The insurer answered and asserted the insured’s disability was caused by a sickness that preexisted the policy of insurance and there was no coverage for this claim. The trial court found as a fact that “plaintiff’s disability is the result of generalized osteoarthritis existing before the policy was issued” and rendered judgment in favor of the insurer dismissing the suit. This devolutive appeal followed.
FACTS
The trial court judge found the following facts in his written reasons for judgment:
On April 16, 1982, the plaintiff, James Harris, Jr. purchased disability insurance contract Certificate No. 14990 from defendant, First Assurance Life of America, in conjunction with the purchase of an automobile from McPete Chevrolet in Baton Rouge, Louisiana_ The sub-
ject insurance coverage is a group credit policy and is subject to the provisions, conditions and limitations of the Master Group Credit Insurance Policy that is issued to the selling dealer.
Plaintiff claims to have become disabled in October, 1983, and filed this claim [suit] October 23, 1984. The defendant represents that plaintiffs disability, if any, was caused by a pre-exist-ing condition. This is supported to some degree by the testimony of Dr. Herschel Dean, Dr. Douglas Davidson and the plaintiff himself. Dr. Dean has apparently treated the plaintiff for approximately twenty years. His records reflect that he has treated plaintiff for generalized osteoarthritis throughout the 1970’s. Records from Dr. Dean’s office indicate that in August of 1979, the plaintiff was seen for multiple arthritis complaints that resulted in treatment with pain relievers and anti-arthritic drugs at least since 1979. During 1980, plaintiff was *247 seen by Dr. Dean with multiple arthritic symptoms and in 1981 he complained of pain in both his shoulders and chest wall.
Dr. Dean feels that plaintiff was disabled at this time due to generalized osteoarthritis, the same condition that his clinic has been treating Mr. Harris for since the 1970’s.
Dr. Davidson’s treatments to plaintiff was not as extensive but did begin in 1979. His initial diagnosis was generalized osteoarthritis. Treatment of plaintiff continued from 1979 through December of 1981 and his records reflect continuous treatment for that condition.
Plaintiff candidly admitted that his arthritis, including shoulder pain, began prior to the date of the defendant’s coverage which is herein sued upon.
Joseph Rohal, testified on behalf of the defendant regarding the denial of plaintiff’s claim. His testimony included the obtaining and review of the plaintiff’s medical records. Based upon his total information he reached the conclusion and advised the defendant that plaintiff may have indeed become disabled but from a pre-existing and consequently a noncovered condition.
The insurance certificate given to Harris provides, in pertinent part, as follows:
PLEASE READ THIS APPLICATION FOR CREDIT INSURANCE
The Applicant understands and agrees that the following statements and representation are offered to the Company as consideration for the insurance applied for in the amount and on the date shown above and becoming a part of any insurance issued and are a part of the evidence used by the Company to determine insurability of the Applicant. The Applicant further understands that the Company may decline to accept the coverage applied for within ninety (90) days from the effective date. If coverage does not take effect, any premium paid shall be refunded.

I do hereby declare that I am gainfully employed and that within the past SIX MONTHS, I have not consulted or been under the care of a doctor or other practitioner for cancer or any disease of the heart, brain, liver, kidneys, or lungs.

I also hereby declare that I am currently in good health and to be best of my knowledge I do not have any physical or mental impairments.

In the event of my death or disability while this policy is in force, First Assurance Life of America is authorized, on my behalf, to obtain information, documents, records and reports concerning me from any doctor, hospital, clinic, or other medical facility.
(Signature of proposed (Signature — Co-debtor) insured)
CREDITOR-DEBTOR INSURANCE ONLY
In consideration of the above premium, the Company does hereby insure the above named insured subject to the provisions, conditions and limitations of the Master Group Credit Insurance Policy issued to the Creditor named above for the initial amount of Life Insurance stipulated above in the event of death and/or for the monthly benefit stipulated above in the event of disability caused by sickness originating after the date of this policy and while this policy is in force or by accidental bodily injuries suffered while this policy is in force.
[Emphasis added.]
Harris was not given a copy of the Master Group Credit Insurance Policy which contains the following:
Exceptions: The insurance afforded by this Policy does not cover any disability: (1) resulting from pre-existing illness, disease of physical condition (whether or not by name or specific description) of which the applicant for insurance was aware or had been treated for within the six months immediately preceding the effective date of his coverage.
EXTENT OF INSURANCE COVERAGE

(Assignment of Error 1)

Plaintiff contends the exclusion listed in the Master Group Credit Insurance Policy *248 should not apply since he was not furnished a copy. Plaintiff further contends the language of the certificate which provides coverage for “disability caused by sickness originating after the date of this policy” is ambiguous when read in conjunction with the declaration by plaintiff that he has not been under a doctor’s care “for cancer or any disease of the heart, brain, liver, kidneys, or lungs.” Plaintiff asserts in brief that “[i]f the insurance company wished to exclude claims under the policy for disability resulting from arthritis then it should have so stated in the policy.” Harris also asserts “degenerative arthritic conditions should not be considered a ‘sickness’ as the term is used in the policy” and the trial court decision that his “disability resulted from a pre-existing condition ... was clearly contrary to the evidence.”

Ambiguity of Coverage

An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Courts are bound to give legal effect to the terms of an insurance policy according to the true intent of the parties, and that intent is to be determined from the words of the contract when they are clear and explicit and lead to no absurd consequences. An ambiguity in a policy of insurance is construed against the insurer and in favor of the insured. Fisher v. Morrison, 519 So.2d 805 (La.App. 1st Cir.1987); Miller v. Duthu, 470 So.2d 500 (La.App. 1st Cir.), writ denied, 474 So.2d 1310 (La.1985). However, courts should not strain to find an ambiguity where none exists merely to provide insurance coverage for a party. Cell-O-Mar, Inc. v. Gros, 479 So.2d 386 (La.App. 1st Cir.1985), writs denied, 481 So.2d 1332 and 1333 (La.1986). Whether a contract is ambiguous or not is a question of law. Aycock v. Allied Enterprises, Inc., 517 So.2d 303 (La.App. 1st Cir.1987), writs denied, 518 So.2d 512 and 513 (La.1988).
It is unnecessary for us to determine whether or not the insurer is entitled to assert the preexisting illness exclusion in the master policy.[1] Even if this exclusion is not applicable, the terms of the certificate issued to the insured control the legal *249 relations between the parties. Cf. Colvin v. Louisiana Hospital Service, Inc., 321 So.2d 416 (La.App. 2nd Cir.), writ denied, 323 So.2d 476 (La.1975). Even if we assume the exclusion in the master policy does not apply and the certificate is controlling, Harris cannot prevail.
The pertinent portion of the insurance certificate given to Harris is divided into the application section and the coverage section. The application section states that the “statements and representation” made by the applicant are offered to the insurer as “a part of the evidence used by the Company to determine insurability of the Applicant.” (Emphasis added.) Determining insurability is a separate issue from that of what coverage is given.
The coverage section of the certificate provides, in pertinent part, that Harris had disability coverage “in the event of disability earned by sickness originating after the date of this policy.” (Emphasis added.) This is a statement of coverage; it is not an exclusion. The corollary of this statement of coverage is that Harris did not have disability coverage if the disability was caused by sickness originating before the date of the policy. The coverage section of the certificate is not ambiguous as to the type of disability that is covered; Harris only has coverage for disability which is caused by sickness originating after the date of the policy. A review of the coverage section of the certificate reveals that nowhere therein is coverage provided for disability caused by sickness originating before the date of the policy. Harris’ declarations about his health in the application section of the certificate do not affect, or render ambiguous, what type of disability is covered. In Estate of Borer v. Louisiana Health Service & Indemnity Company, 398 So.2d 1124, 1126 (La.1981), appears the following:
The so-called preexisting condition defense, unlike the misrepresentation defense is a question of contract interpretation. The availability of the defense is not dependent upon statements made by the insured in the application; the question is whether the policy excludes coverage for preexisting conditions. Thus, whether the application is attached to the policy is irrelevant when the defense is based on the preexisting defense exclusion. (Emphasis added.)
In the instant case, the certificate does not exclude disability caused by a preexisting illness; it very simply does not include such coverage. This portion of the assignment of error is without merit.

Proof of Sickness Originating Before Date of Policy

The insurer had the burden of proving the preexisting sickness defense by a preponderance of the evidence. McCord v. Time Insurance Company, 521 So.2d 558 (La.App. 1st Cir.1988).
Dr. Herschel B. Dean, a general practitioner, testified Harris was seen by his (Dean’s) partner, Dr. Foster Sanders, in October of 1967 and at that time Harris was diagnosed as having generalized osteoarthritis and bursitis. Harris was seen by Dr. Sanders on February 28, 1978, and Dr. Sanders prescribed antiarthritic medication for Harris. Dr. Dean saw Harris on June 11,1982; Harris complained of pain in his hip and back and gave a history of having osteoarthritis. Dr. Dean saw Harris again on October 13, 1983; Harris complained of a painful right shoulder. Dr. Dean diagnosed the condition as bursitis (inflammation of the joint cavity) and injected Harris’ shoulder with zylocaine and cortisone. X-rays were taken which were interpreted as showing calcified tendinitis and a small cortical fracture of the humeral head. Dr. Dean prescribed heat and anti-inflammatory drugs. Dr. Dean continued to treat Harris through December 11,1985. Dr. Dean was of the opinion that Harris’ disability was caused by generalized osteoarthritis and considered osteoarthritis an illness or disease.
Dr. Douglas W. Davidson, a general practitioner, testified he first saw Harris on October 12,1979. Harris gave a history of prior treatment for arthritis by Dr. Foster Sanders and prior diagnosis of arthritis at annual union physicals. Dr. Davidson obtained reports of two physicals from *250 Harris’ union which indicated osteoarthritis and treatment therefor. Dr. Davidson treated Harris for generalized osteoarthritis degenerative joint disease. Generalized means a high percentage of joints are affected. Harris saw Dr. Davidson again on April 11, 1980, with the same complaints. On July 1, 1980, Dr. Davidson refilled Harris’ prescription for Clinoril, an anti-inflammatory drug, which had previously been prescribed by Dr. Sanders. Harris saw Dr. Davidson on September 18, 1981, with generalized pain in the lower back, both hips and left shoulder; Dr. Davidson continued Harris’ anti-arthritic medicine. Dr. Davidson saw Harris about his osteoarthritis on May 21 and October 28, 1982, and on February 4 and December 29, 1983. Dr. Davidson testified that any osteoarthritis that deviated from the normal was a disease, some arthritis occurs in the aging process, “but in his [Harris’] case it was quite severe.”
Harris testified and agreed about the treatment given him by Drs. Davidson and Dean. Harris stopped working because of his physical condition on October 13, 1983. Harris admitted he had been treated for his arthritic condition prior to 1982.
After reviewing this evidence, we must conclude that the trial court was not clearly wrong in determining as fact that Harris’ generalized osteoarthritic condition was a sickness, that this sickness originated before the date of the policy and Harris’ disability was caused by this sickness. This portion of this assignment of error is without merit.
APPLICABILITY OF INCONTESTABILITY CLAUSE

(Assignment of Error 2)

In the trial court, Harris asserted that the two year incontestability clause of the policy precludes the insurer from claiming a coverage defense. The trial court rejected this argument with the following rationale:
The policy was purchased in April, 1982, and plaintiff did not make a claim until June 1984. The claim, however, was for disability arising in October of 1983, clearly within the three years set forth by law. Plaintiff’s claim arises at the time of his disability and not at the time the claim is filed.
In this court, Harris advances the following argument to support this assignment of error:
Harris obtained the policy in April of 1982 and made a claim for disability in June of 1984. More than two years had passed. The more favorable two year period stated in the policy would apply and in accordance with the policy provisions the insurer should be estopped from denying the claim on the grounds that a disease or physical condition not excluded from coverage by name or specific description existed prior to the effective date of coverage.
Harris cites La.R.S. 22:213 to support his argument.[2]
*251 The facts concerning this assignment of error are not in contest. Harris’ policy of insurance went into effect on April 16, 1982. In his testimony and in brief, Harris asserts he became disabled on or about October 13, 1983. This claim was filed with the insurer on June 21, 1984. The certificate of insurance contains the following provision:
INCONTESTABLE: The validity of the policy shall not be contested except for non-payment of premiums, after it has been in force for two years from its date of issue. (Emphasis added.)
We agree with the trial court that the incontestability clause applies to claims arising after the policy has been in effect for two years. It does not apply to claims arising within the first two years of the policy’s existence. To construe the provision otherwise would make it meaningless because the provision could be avoided by the simple expedient of not filing the claim until after the contestability period expired; such a construction leads to an absurd consequence.
This assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Harris is cast for the cost of this appeal.
AFFIRMED.
SHORTESS, J., dissents with reasons.

. Because of our holding in this assignment of error, it is unnecessary to classify the policy herein as either a life insurance policy or a health and accident insurance policy. The master policy provides decreasing term life insurance and accident and sickness disability insurance. A life insurance policy is defined in La.R. S. 22:6(1) as follows:
Life. Insurance on human lives and insurances appertaining thereto or connected therewith. For the purposes of this Code the transacting of life insurance includes the granting of annuities or survivorship benefits; additional benefits in the event of death by accident; additional benefits in event of the total and permanent disability of the insured; and optional modes of settlement of proceeds.
Life insurance policies are regulated by La.R.S. 22:161-181. A health and accident insurance policy is defined in La.R.S. 22:6(2) as follows:
Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.
Health and accident insurance policies are regulated by La.R.S. 22:211-225.
Pursuant to La.R.S. 22:176(7), a group life insurance insurer is required to "issue to the policyholder for delivery to the ... member, whose life is insured under such policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled,_” Pursuant to La.R.S. 22:215(A)(3)(g), a group health and accident insurer "shall furnish to the policyholder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to notice of claim, proof of loss, time of payment of claim and any other relevant information, including the name and address of the insurer."
In the case of Colvin v. Louisiana Hospital Service, Inc., 321 So.2d 416 (La.App. 2nd Cir.), writ denied, 323 So.2d 476 (La.1975), a group health and accident insurer provided an insured with a certificate of coverage that did not mention the coordination of benefits provision of the master policy. The court held that La.R.S. 22:215 required the insurer to properly advise the insured in the certificate of his coverage, the certificate did not show the coordination of benefits limitation to coverage, the terms of the certificate prevailed over the master policy and the insurer was not entitled to coordinate benefits. Although the provisions of La.R.S. 22:176(7) and La.R.S. 22:215(A)(3)(g) are not identical, they are similar, and the rationale of the Colvin case should apply in interpreting La.R.S. 22:176(7).
See also La.R.S. 22:176 as it applies to groups defined in La.R.S. 22:175(A)(3).

. La.R.S. 22:176(2) provides for incontestability clauses in group life insurance policies as follows:
Incontestability: A provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue and that no statement made by an individual insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such individual’s lifetime nor unless it is contained in a written instrument signed by him. (Emphasis added.)
La.R.S. 22:213(A)(13)(b) provides for incontestability clauses in group health and accident policies as follows:
No claim for loss incurred or disability (as defined in the policy) commencing after three years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.
[But see La.R.S. 22:215(A)(3)(e) and La.R.S. 22:221.]
There is a distinction between the validity of a policy and the coverage of a policy. Jackson v. Continental Casualty Company, 412 So.2d 1364 (La.1982) (Dennis, J., concurring); Allison v. *251 Aetna Life Ins. Co., 158 So. 389 (La.App. 2nd Cir.1935). See also W. McKenzie and H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice, § 255 — Incontestability Clauses, pp. 462-473 (1986).