BANKERS LIFE & CASUALTY COM-
PANY, Appellant,

v.

Nomie M. NAMIE, Appellee.

No. 21451.

United States Court of Appeals
Fifth Circuit.

Feb. 4, 1965.

Charles W. Salley, Milton C. Trichel, Jr., and Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, La., for appellant.

H. F. Sockrider, Jr., Shreveport, La., W. M. Shaw, Homer, La., Joseph C. LeSage, Jr., Shreveport, La., Shaw & Shaw, Homer, La., Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for appellee.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal from a summary judgment in favor of Nomie M. Namie (appellee-defendant) which resulted in the dismissal of the complaint of Bankers Life & Casualty Company (appellant-plaintiff). The complaint sought a declaratory judgment on the issue of whether a certain accident insurance policy issued by plaintiff to defendant should be rescinded and held null and void because of alleged material misrepresentations made by the defendant in his application for the policy.[1] Jurisdiction was based on diversity of citizenship and an alleged maximum exposure to liability

---

1. The accident insurance policy issued by appellant to appellee is alleged to provide the following amounts of indemnities:

| | |
|---|---|
| Principal sum | $50,000.00 |
| Weekly Indemnity (maximum of 52 weeks) | 100.00 |
| Medical Expenses | 1,000.00 |

under the accident policy in excess of $50,000.00.

■ The accident which gave rise to the controversy was, and still is, shrouded in mystery. On the night of November 7, 1962, the defendant, Nomie M. Namie, was shot five times by a person or persons unknown as he was leaving a night club in Bossier City, Louisiana. The complaint was filed on February 1, 1963. It is alleged that if correct answers had been given in the application for the policy it would not have been issued, and that the falsity of the answers materially affected both the acceptance of the risk and the hazard assumed by the insurer.[2] Initially, the defendant filed a motion to dismiss for lack of the jurisdictional amount, and this motion was denied by the court. Thereafter, the defendant moved the court for summary judgment on the ground that the amount in dispute did not exceed $10,000.00, exclusive of interest and cost. Affidavits were filed by both parties.

In his first affidavit, filed on November 22, 1963, the defendant stated that he did not claim permanent total disability under the policy, and that when the plaintiff's suit was filed (February 1, 1963), efforts to settle the claim had been unsuccessful because he had not been released by his doctor. The affidavit concluded that "at the present time" the total claim of the defendant under the policy is the sum of $6,300.00. The plaintiff insurance company filed a counter-affidavit in which it was asserted that, at the time of filing suit and presently, there was a genuine dispute as to an amount in excess of $10,000.00, exclusive of interest and cost; that the defendant had not been discharged by his physician; and that the defendant insisted that he did not know the amount of his claim because his physician had

not advised him of his condition. The plaintiff's affidavit further states that the plaintiff last communicated with the defendant on the 31st day of January 1963, and was assured by the defendant that he would inform the company of the amount of his claim that day, but that the defendant neglected to contact the plaintiff. Attached to the plaintiff's affidavit is a letter from its attorneys, dated January 31, 1963, calling defendant Namie's attention to the fact that he had failed to contact the plaintiff as promised on January 31. Also attached to the affidavit of the plaintiff is a statement by Dr. Black, Namie's physician, wherein the physician stated that Namie "will possibly be able to return to work in 4 to 6 weeks," and further asserting that he "still has a total disability." The physician's report is dated January 24, 1963, approximately one week before suit was filed. The plaintiff's affidavit is dated December 6, 1963. Thereafter, on January 14, 1964, the defendant Namie filed a supplemental affidavit, dated December 18, 1963, in support of his motion in which he asserted that he had no claim in the case which exceeded $10,-000.00, and that he "forever bars himself from making any claim under said policy * * * for any amount of money exceeding $10,000.00."

The sole issue before us is whether the matter in controversy exceeds the sum or value of $10,000.00, exclusive of interest and cost. We conclude that the proper jurisdictional amount was placed in controversy and that the lower court committed error in granting defendant's motion for summary judgment.

In our recent case of Otis Elevator Co. v. Seale, (5 Cir. 1964) 334 F.2d 928, we considered this question under different facts and circumstances. As there stated, the rule is clearly set forth in

2. The plaintiff prayed in the alternative that, if rescission of the policy was refused, the court decree that its liability to the defendant under the policy was limited to certain weekly benefits and medical expenses. Where a complaint proceeds on two alternative theories, only one of which satisfies the amount-in-controversy requirement, jurisdiction has been sustained. See Moore's Federal Practice (2d ed.) V.2, § 8.11, p. 1671, Note 22. American Fidelity & Casualty Co. v. Owensboro Milling Co., (6 Cir. 1955) 222 F.2d 109.

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), wherein the Court stated:

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. \* \* Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."

 In the present case the plaintiff sought to rescind an existing contract of insurance which, by its terms, exposed the plaintiff to maximum liability in an amount far in excess of $10,000.00. The entire insurance contract was in issue. If it should be conceded that the defendant's second affidavit could properly be considered as a surrender of the policy and a release of all liability thereunder, such was not the case when suit was filed. Even as late as November 22, 1963, months after the suit was filed, uncertainty remained as to the amount of the defendant's claim according to his own affidavit, in which he states that "at the present time" his total claim was the sum of $6,300.00. The amount to which the defendant decided he was entitled became certain subsequent to the institution of the suit. His decision with respect to damages sustained on the particular occasion when he was shot should not control the issue as to the jurisdictional amount. Nowhere is there any proof that the plaintiff was not subject to the maximum liability provided by the policy, and the validity of the policy was the issue involved. We are unable to conclude, therefore, that it was apparent to a legal certainty that the plaintiff was not exposed to liability in excess of $10,000.00 and we find no evidence that the plaintiff alleged the jurisdictional amount in bad faith. 28 U.S.C.A. § 1332; Bell v. Preferred Life Assur. Soc., 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); Northeast Clackamas County Elec. Co-Op. v. Continental Cas. Co., (9 Cir. 1955) 221 F.2d 329; National Surety Corp. v. Chamberlain, (D.C.N.D.Tex., 1959) 171 F.Supp. 591; Loew's, Inc. v. Martin, (D.C.N.D.Ohio 1950) 10 F.R.D. 143.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.