406 So.2d 742 (1981)
Wilton LOMBARD
v.
MANCHESTER LIFE INSURANCE COMPANY.
No. 12147.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1981.
Writ Denied January 8, 1982.
*744 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Stewart E. Niles, Jr., New Orleans, for plaintiff-appellee.
Organ & Meyer, Coleman T. Organ, New Orleans, for defendant-appellant.
Before GULOTTA, GARRISON and BARRY, JJ.
GULOTTA, Judge.
While a student at L. B. Landry Junior-Senior High School on September 17, 1971, Wilton Lombard suffered the loss of sight in both eyes from a gunshot wound to his face. The incident occurred in Mobile, Alabama after a football game when plaintiff and his teammates on the Landry football squad were disembarking from a bus in a parking lot. The shots were fired by three individuals at a distance of approximately fifty feet from the team.
Suit was brought on April 4, 1977 against Manchester Life Insurance Company for capital sum benefits for the loss of sight of both eyes under insurance policies issued to the Orleans Parish School Board and covering plaintiff as a student and football player at Landry High School. Judgment was rendered in favor of plaintiff for the total amount of capital benefits under two policies of insurance in the sum of $15,000.00 ($10,000.00 under one policy and $5,000.00 under a rider), plus 100% penalties, together with $6,000.00 in attorney's fees and $570.90 for medical expenses. The total award was $36,570.90.
Defendant, appealing, claims the suit filed approximately five years and six months post accident has prescribed since the policy provides for a three-year-and-ninety-day prescriptive period for the filing of suit after the accident. Defendant further claims the trial judge erred in awarding coverage for benefits under two policies when plaintiff was only entitled to benefits of $5,000.00 under the interscholastic sports coverage rider alone. Defendant also complains the trial judge erroneously assessed penalties and attorney's fees, and penalties, even if warranted, should be 12% instead of 100%. Finally, Manchester argues lack of coverage since the gunshots were "intentional" and specifically excluded under the policy.
Finding no merit to these contentions, we affirm.

PRESCRIPTION
It is true, as pointed out by defendant, that the contract of insurance provides for a three-year-and-ninety-day prescriptive period for the filing of suit after the date of the accident. It is true also that suit was filed approximately five years and six months post-accident. Nonetheless, we conclude, as did the trial judge, that plaintiff's suit has not prescribed.
LSA-R.S. 22:215A(3)(g) provides that in group, family group, blanket and franchise health and accident insurance policies:
"... The insurer shall furnish to the policy holder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to notice of claim, proof of loss, time of payment of claim and any other relevant information, including the name and address of the insurer...."
Although LSA-R.S. 22:215 was amended by Act 138 of 1972 to include the above language, it is well settled in our jurisprudence that such statutes are remedial, curative, or, procedural in nature and are given retroactive effect. See Lott v. Haley, 370 So.2d 521 (La.1979); Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978); Fullilove v. U. S. Casualty Company of New York, 129 So.2d 816 (La.App. 2d Cir. 1961). Accordingly, we conclude the 1972 amendment applies to an accident occurring on September 17, 1971.
Mrs. Vera Lombard, plaintiff's mother, testified that she had purchased the health and accident insurance coverage for her son through the Landry School and the school board; that she had paid the required premium; that she had never received *745 a copy of the policy; and that the document given to her, which summarized the coverage, did not state or include the prescriptive period set forth in the master policy. Her testimony was uncontroverted.
Under these circumstances, we conclude the Lombards' non-discovery of the time limitations was not due to their fault and they are not bound by the policy's limitation period. We interpret LSA-R.S. 22:215A(3)(g) as imposing a duty on the insurer to disclose to the insured the policy's limitation on the time for filing suit. Failure to notify the insured of such limitation in the certificate of insurance effectively relieves the insured from complying with the time limitation.
Accordingly, we hold that because no certificate of insurance was furnished to plaintiff and his mother notifying them of the benefits, limitations, exclusions and deductions as required under LSA-R.S. 22:215A(3)(g) as amended, they could not have been informed of the necessity of filing the suit within the three-year-and-ninety-day prescriptive period. Having so concluded, we hold that plaintiff's action was timely filed.

POLICY COVERAGE
The policy in question is a student accident insurance policy issued to the Orleans Parish School Board that is in the nature of a blanket policy in the capital sum of $10,000.00. This policy provides for benefits in the full amount of the capital sum where the sight of both eyes is lost. Excluded from coverage are persons who are injured as a result of being involved in interscholastic activities including football, unless a football coverage rider is purchased. Because of Wilton Lombard's participation on the football team at Landry School, he was afforded an "interscholastic sports coverage rider" that deleted the exclusions from coverage on the main policy. This rider provided payment in the capital sum of $5,000.00. The trial judge, concluding that both the main policy providing for $10,000.00 coverage and the rider providing for $5,000.00 coverage applied to plaintiff's loss of sight, awarded a total of $15,000.00 benefits.
Complaining that the trial judge erred in awarding coverage under the main policy and the rider, defendant contends that the $5,000.00 interscholastic sports coverage rider is applicable and not coverage under the main policy. Defendant argues that without this rider plaintiff would not be entitled to any coverage because he would have been excluded from benefits under paragraph (3) of the "insuring agreements"[1] and paragraph (1) of the "exclusions" in the main policy.[2] According to defendant, because *746 plaintiff's injury occurred in connection with football which was excluded under the main policy, he would not have been entitled to any coverage except that which is provided for under the sports coverage rider. We do not agree.
Plaintiff's coverage is under paragraph (4) of the policy, which provides for coverage where bodily injuries are caused by accidental means:
"(4) While traveling directly to and from any regularly scheduled and approved School activity with other students or employees of the School as a group, provided, if the Insured is a student, that such group is at the time under the personal supervision of an adult authority of the School; ..."
It is undisputed that the injury resulted while Wilton Lombard was traveling in connection with a regularly scheduled and approved school activity with other students under the supervision of a school authority. It is clear from paragraph (4) of the insuring agreement that the main $10,000.00 capital sum provided for in the accident insurance policy is applicable. Clearly, plaintiff is entitled to that amount as set forth under the dismemberment schedule for the loss of sight of both eyes in the main policy.
The more difficult problem is whether the rider is applicable to plaintiff's injury in addition to the benefits described under the main policy. In that connection, the rider points out that an additional premium had been paid for the coverage set forth in the rider. In other words, not only did plaintiff pay the premium for coverage under the main policy, but also an additional premium was assessed for coverage under the rider.
The rider provides, in pertinent part:
"INTERSCHOLASTIC SPORTS COVERAGE RIDER
In consideration of the payment of the premium stated herein, it is hereby agreed that agreement (3) of Insuring Agreements and exclusion (1) of Exclusions of the Policy to which this rider is attached is hereby deleted with respect to the interscholastic sport identified in the Schedule of this Rider (herein called Covered Sport) to the extent that coverage is provided hereunder. Persons insured under this Rider are those players of the Holder participating in the play or practice of the Covered Sport as a member of the team or teams identified in the Schedule as a Covered Team. Coaches and managers of the Covered Sports team or teams insured under this Rider are also insured hereunder; provided they are otherwise insured under the Policy."
It is apparent that the primary purpose of the rider, vis-a-vis our case, is to delete the football exclusion of the main policy. In reading the wording of the rider, however, it is not clear whether the manner in which plaintiff received the injury is covered by the rider and whether coverage under the rider precludes additional coverage under the main policy.
The rider uses the term "participating in the play or practice of the covered sport as a member of the team or teams...." The question arises whether the injury must occur during actual play in a football game or practice or whether participating in playing football includes other team activities related to actual games or practice sessions. One interpretation of this language is that coverage is afforded when injuries occur during actual play or practice. Another interpretation of the rider is that coverage is afforded where one is injured while participating in a team activity on a football trip. If the rider had specifically stated that coverage was only afforded for injuries occurring during actual play or practice, plaintiff's injury would not be covered. Silence in this regard causes ambiguity.
Well settled is the rule that where ambiguities exist in a policy, the language is to be read broadly in favor of coverage *747 and any ambiguity is to be construed against the insurer. Insurance Co. of North America v. Solari Parking, 370 So.2d 503 (La.1979); Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958). Under the circumstances of our case, when we read the ambiguously worded policy and rider together, we conclude that plaintiff's injury while traveling with the football team from a scheduled game entitles him to the benefits of both the rider and the main policy. We cannot conclude that coverage under the rider excludes coverage under the main policy, or vice versa. Accordingly, we find no error in the trial court's judgment awarding coverage under both to plaintiff in the sum of $15,000.00.

PENALTIES AND ATTORNEY'S FEES
Manchester claims that because no claim was made by plaintiff for benefits under the dismemberment schedule of the policy, and because the claim forms submitted to Manchester indicate injuries resulting from "gun shot wounds of face", no showing was made that Manchester had knowledge of plaintiff's total loss of sight. Under these circumstances, and in view of Manchester's payment of the medical bills actually submitted, defendant argues penalties were erroneously assessed by the trial judge.
Alternatively, citing Rachal v. Natchitoches Parish Police Jury, 370 So.2d 185 (La.App. 3rd Cir. 1979), defendant claims the principal purpose of the policy was to cover medical benefits and such a policy is not a health and accident one. According to the defendant, because the policy in question is not health and accident, LSA-R.S. 22:657, providing for penalties in an amount "... double the amount of the health and accident benefits due under the terms of the policy ...", was erroneously applied. Manchester claims that if plaintiff is entitled to penalties, it is the 12% penalty provided for in LSA-R.S. 22:658 for policies other than life, health and accident. We reject these contentions.
The policy is designated on its face as a "STUDENT ACCIDENT INSURANCE POLICY". It provides for not only medical benefits, but also for scheduled dismemberment benefits, depending on the loss, from one-half to the entire $10,000.00 capital sum. The policy is replete with reference to accidental injury benefits, accidental death benefits and medical and expense benefits. If there exists entitlement to penalties, those penalties are properly assessed under LSA-R.S. 22:657 providing for 100% penalties.
In connection with entitlement to penalties, it is undisputed that a claim for benefits was made by plaintiff's mother for injuries received. Furthermore, Mrs. Lombard testified that after the claim form had been submitted, Manchester did not contact her or her son to pay benefits under the policy. Mrs. Lombard further testified that she had paid a hospital bill when advised by the hospital that the insurance company had refused to pay it. All of this testimony was uncontroverted.
The test for awarding penalties and attorney's fees under LSA-R.S. 22:657 is whether the insurer withheld payment of the claim more than thirty days without just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard. Miller v. American Casualty Company, 263 So.2d 398 (La.App. 4th Cir. 1972), writ denied, 262 La. 1151, 266 So.2d 441 (1972); Lapeyrouse v. Pilot Life Ins. Co., 369 So.2d 1128 (La.App. 1st Cir. 1979). Manchester's unreasonable failure to respond to the claim other than to pay part of the medical expenses subjects it to liability for penalties and attorney's fees as contemplated in the statute. Accordingly, we find no error on the part of the trial judge either in the assessment of penalties or in the amount of those penalties.
Furthermore, we do not find the $6,000.00 attorney's fee award excessive. Considering the time expended at the trial and appellate levels, the effort involved and the result accomplished, we find the award reasonable. Although cognizant of plaintiff's attorney's effort in defending against this appeal, we decline to increase the amount awarded.

*748 INTENTIONAL INJURY
Finally, we find no merit to defendant's claim that plaintiff's injuries resulted from intentional gunshots and are therefore excluded from benefits under the policy. The "EXCLUSIONS" section of the sport's coverage rider provides:
"No payment of any kind shall be made for injury, death or any other loss caused wholly or partly, directly or indirectly by... gunshot injuries (intentional) ...."
Well-established in our jurisprudence is the rule that an insurer has the duty to prove the facts which it asserts exculpate it from liability under exclusionary provisions of the policy. See Lawrence v. Moore, 362 So.2d 803 (La.App. 4th Cir. 1978), writ granted, 365 So.2d 230 (La.1978), appeal dismissed, 368 So.2d 121 (La.1979); von Dameck v. St. Paul Fire & Marine Ins., 361 So.2d 283 (La.App. 1st Cir. 1978), writ denied, 362 So.2d 794 (La.1978) and 362 So.2d 802 (La.1978); Chesky v. Orleans Parish Sch. Bd., 359 So.2d 1002 (La.App. 4th Cir. 1978); Carriere v. Triangle Auto Service, 340 So.2d 665 (La.App. 4th Cir. 1977).
The evidence in connection with the shooting was supplied by the plaintiff only. He stated that he was standing about fifty feet from the persons firing the shot after he had disembarked from the bus. Three shots were fired in the direction of the football team and he was struck in the face. There is no evidence to indicate that the persons firing the weapon intentionally fired at plaintiff or that the wounds were intentionally inflicted upon him by those firing the shots. In the absence of any additional testimony, we cannot conclude the trial judge erred in finding that Manchester failed to prove that the exclusion for "gunshot injuries (intentional)" applies. Defendant simply failed to show that plaintiff is excluded from coverage.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
BARRY, Judge, concurring.
As to defendant's plea of prescription, the Proof of Loss clause mandates that said proof be filed within 90 days or one year "except in the absence of legal capacity." The Legal Actions clause provides that a lawsuit must be filed within three years after the proof of loss requirement. Therefore, the minor plaintiff lacked capacity until his eighteenth birthday which was September 21, 1974 causing prescription to accrue on September 21, causing prescription to 1977. This lawsuit was filed April 4, 1977 which was timely and sufficient to defeat defendant's plea of prescription.
I join in the balance of the well-reasoned opinion.
NOTES
[1] "INSURING AGREEMENTS

2. If any person, as a result, directly and independently of all other causes, of bodily injuries caused by accidental means occurring while insured hereunder and while
1) . . .
2) ...
3) participating in extra-curricular activities (excluding the play or practice of any form of interscholastic football in which students participate or ice hockey, lacrosse or soccer in which any student participates) under the supervision of the Policyholder during a school term in which the insured person is either regularly enrolled as a student or actively employed under the supervision of the Policyholder;
4) ...
5) ...
6) ...
(which injuries are herein called `such injuries') shall suffer loss of life, hands, feet or sight with in 100 days following the date of the accident causing such injuries or shall actually be examined in person and treated by a physician or dentist within thirty days following the date of such accident and shall incur expenses for such treatment or for hospital confinement, professional ambulance service or the services of a Registered Nurse within twelve months following the date of such accident, the Company shall pay, subject to the terms and conditions of this Policy, the benefits hereinafter provided:
For the purpose of this insurance an extracurricular activity shall be deemed to be under the supervision of the Policyholder only if the activity is directly supervised by an employee specifically designated by the Policyholder for that purpose who is physically present at the place where the activity is being conducted."
[2] "EXCLUSIONS

No payment of any kind shall be made for injury, death or any other loss caused, wholly or partly, directly or indirectly by:
(1) Injuries sustained as the result of participating in or while practicing for interscholastic tackle football in grades 7 through 12 including travel to or from such activities or practices (unless football coverage is purchased);..."