Yves J. FONTENOT, Plaintiff-Appellant,

v.

GLOBAL MARINE, INC., et al.,
Defendants-Appellees.

No. 82–4415
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 25, 1983.

---

Morrow & Morrow, J. Michael Morrow, James P. Ryan, Opelousas, La., for plaintiff-appellant.

Lewis & Lewis, James T. Guglielmo, Opelousas, La., for Global Marine.

Dubuisson, Brinkhaus, Dauzat, Dubuisson & Falgoust, Edward B. Dubuisson, Opelousas, La., for Union Mut.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Appellant, Yves J. Fontenot, originally brought suit in Louisiana state court against his employer, Global Marine, Inc. ("Global"), for an injury aboard ship. Subsequently, on February 4, 1980, appellant amended his state petition to include Unionmutual Stock Life Insurance Company of America ("Unionmutual") as a defendant. On February 28, 1980, Unionmutual removed the lawsuit from state court to the United States District Court on the basis of diversity jurisdiction; appellant was a resident of Louisiana, Global was a Delaware corporation with its principal place of business in California, and Unionmutual was a Maine corporation with its principal place of business in that state.

Appellant began working for Global on February 9, 1979 as a seaman. He was injured five days later, on February 14, 1979 when he fell while working aboard Global's vessel. As a result of his injury, he suffered a herniated disc which he alleges rendered him totally and permanently disabled. At the time of his employment, eligible employees of Global were covered by a disability insurance policy issued by Unionmutual. Appellant claimed under that policy, but Unionmutual denied coverage on the ground that he had not been an employee long enough for policy coverage. Both appellant and Unionmutual moved for summary judgment in the district court. The court granted Unionmutual's motion, and denied that of appellant, finding that pursuant to the terms of the insurance policy appellant did not become eligible for coverage until March 1, 1979, and hence his injury of February 14 was not insured.[1]

Subsequent to the decision of the district court, appellant moved in that court to remand the case to state court, alleging that removal had been granted improperly. He claimed: (1) the amount in controversy prerequisite to diversity jurisdiction was not met; (2) Global had failed to join in the petition for removal as required by 28 U.S.C. § 1441(a); and (3) the removal petition filed by Unionmutual was defective in failing to allege Global's principal place of business, for purposes of determining the existence of complete diversity.

The district court, by written opinion dated June 15, 1981, denied appellant's motion to remand. It found: (1) the requisite jurisdictional amount was at issue since Global's exposure to liability exceeded $10,000; (2) Global's failure to join timely in the petition for removal[2] could not be relied upon by appellant at this stage of the litigation, as his conduct amounted to a waiver of his objection; and (3) any deficiency in alleging the citizenship necessary for determination of diversity jurisdiction was cured by Global's motion to join in the removal petition.

Trial before the court on the merits of the case against appellant's employer, Global, was then held. Appellant's claim against his employer was that the Global representative who interviewed him made affirmative verbal representations that he would be covered under the Unionmutual policy as soon as he began his employment. At trial, the court became aware for the first time that a certificate or abstract of insurance furnished by Unionmutual to Global was provided appellant at the time of his pre-employment interview. The court then vacated its initial ruling in favor of Unionmutual, "[b]ecause of the possibility that liability under the policy could be visited on Unionmutual under the terms of the certificate of insurance (and irrespective of the terms of the policy)." The case against Unionmutual was then submitted on the record made in the previous hearing

---

**1.** The policy provision at issue provided that the "eligibility waiting period" for new employees such as appellant was "[t]he first day of the month coincident with or next following date of full-time active employment." The district court, by written opinion dated March 23, 1981, considered this provision and concluded that it operated to render appellant ineligible for coverage until March 1, 1979. Appellant does not challenge this interpretation.

**2.** 28 U.S.C. § 1446(b) provides a thirty-day time limit for joinder in a petition for removal. Global, however, failed to join in the petition until May 29, 1981, after appellant had moved to remand this action to state court.

on Global's liability, as supplemented by exhibits and briefs filed following that hearing.

On September 8, 1982, the district court rendered judgment for defendants. As to the liability of Global, the court concluded that appellant failed to carry his burden of establishing that verbal representations of coverage were in fact made to him. As to the liability of Unionmutual, the court considered the language in the abstract of coverage, in the light of Louisiana jurisprudence, and held that the abstract was neither misleading nor insufficient.

Appellant now appeals the district court's denial of his motion to remand to the state court, and the district court's judgment rendered in favor of both defendants.

### I. Removal

Appellant argues that the district court erred in denying his motion to remand since both defendants had not joined in the original petition to remove, as required by 28 U.S.C. § 1446(a).[3] Appellant advances three contentions: (1) Global never moved to join the petition for removal; (2) even if such a motion had been made, its tardy submission could not cure the original jurisdictional defect; and (3) even if the thirty-day limitations period in the removal stat-

ute does not affect the jurisdiction of the district court, appellant's conduct could not be deemed a waiver of his right to object. We find no merit in appellant's contentions.

First, we reject out of hand appellant's allegation that Global failed to file a motion to join in the removal petition, however tardy. Such a petition, as characterized by the district court, appears in the record on appeal.

Second, this Court's recent decision in *Harris v. Edward Hyman Co.,* 664 F.2d 943 (5th Cir.1981), establishes that the thirty-day limitations period in 28 U.S.C. § 1446(b),[4] in which a state court defendant can file a petition to remove, "does not affect the jurisdiction of the district court and that 'failure to file the petition within the alloted time may be waived.'" *Id.* at 945 (quoting *Weeks v. Fidelity & Casualty Co.,* 218 F.2d 503, 504 (5th Cir.1955)).[5] In *Harris* we concluded that "a party who delays in seeking a remand, or otherwise participates in the proceedings in the district court, also may be precluded from objecting to a defendant's untimely consent to a defective removal petition." *Ibid.*

The facts of the immediate case, as recited by the court below, fall squarely within

---

**3.** 28 U.S.C. § 1446(a) provides:

(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action.

This statute has been interpreted, with exceptions inapplicable to the immediate case, to "require[ ] that all defendants join in the removal petition." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349,* 427 F.2d 325, 326 (5th Cir.1970). *See Harris v. Edward Hyman Co.,* 664 F.2d 943, 944 n. 3 (5th Cir.1981); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3731, at 718 (1979).

**4.** 28 U.S.C. § 1446(b) provides in pertinent part:

(b) The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

**5.** *Cf. McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir.1982) ("[w]hen an action is improperly removed, yet final judgment is entered on the merits by the district court without a motion to remand or other objection, our inquiry is 'not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court'") (quoting *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972); *Lockwood Corp. v. Black,* 669 F.2d 324, 326 (5th Cir.1982)).

the *Harris* decision.[6] As well observed by the district court, this action was allowed to remain on the court's docket, without objection, for thirteen months. Counsel for plaintiff-appellant, as well as counsel for defendant-appellees, attended a status conference before a United States Magistrate on January 20, 1981. In anticipation of this conference, on December 23, 1980, appellant's counsel represented to the magistrate, in writing, that "jurisdiction is established." Further, a pretrial conference was held on February 13, 1981, which all parties attended. In the memorandum of the pretrial conference filed by the Deputy Clerk of Court there is no indication of any jurisdictional dispute. On the contrary, pursuant to the clerk's memorandum, appellant was permitted seven days in which to file a motion for summary judgment. When, on February 25, 1981, appellant did file his motion for summary judgment addressing the issue of Unionmutual's liability, appellant's memorandum specifically noted:

> Jurisdiction is based on diversity of citizenship and the fact that the amount in dispute, exclusive of interest and costs, exceeds $10,000.00. Jurisdiction is not disputed.

Further, on April 3, 1981, counsel for Global filed a pretrial stipulation arising out of the pretrial conference of February 13, 1981, which was signed by all parties and which acknowledged jurisdiction. It was not until after the court granted Unionmutual's motion for summary judgment and denied appellant's summary judgment motion, that appellant voiced objection to jurisdiction.

The above recitation of facts, relied upon by the court below, clearly demonstrates appellant's full participation in the lawsuit in federal court. We find, therefore, that appellant waived his right to object to Global's tardy joinder in the removal petition. Appellant, both by his conduct and by his explicit statements, unequivocally recognized jurisdiction in the federal court at all times prior to the unfavorable district court ruling on his motion for summary judgment and the favorable ruling on defendant Unionmutual's motion. It would be manifestly unjust to permit appellant to maintain his objections to removal at the stage of the proceedings at which they were raised. Since we find that Global's tardy joinder in the removal petition did not affect the jurisdiction of the court and that appellant clearly waived his right to object to this originally defective removal petition which was subsequently cured, we conclude that the district court properly denied appellant's motion to remand.[7]

6. Only one of the two codefendants in *Harris* moved to remove the case to federal court. As in the immediate case, the delinquent defendant failed to join in the removal petition until after plaintiff had moved to remand the action to state court, well after the expiration of the thirty-day period set out in the statute. 28 U.S.C. § 1446(b). On appeal, the court found that by participating in discovery in federal court, plaintiff waived any right to seek remand of the action to state court. The court found that plaintiff had served requests for admissions, request for production of documents, and a set of interrogatories upon both defendants. Further, the court found significant the fact that plaintiff had responded to the properly petitioning defendant's request for production of documents. The court therefore concluded:

> Indeed, until the motion to remand was filed, the action proceeded as any other with [plaintiff] giving no indication that she was dissatisfied with her federal forum. These acts are consistent with a waiver of a litigant's right to seek a remand to state court. . . .

664 F.2d at 945.

7. Although not raised by appellant on appeal, we briefly take note of the two other objections to jurisdiction originally raised by appellant in his motion for remand as they might affect our jurisdiction. First, while the absence of the requisite $10,000 amount in controversy would be an unwaivable jurisdictional defect, appellant's disability claim, as well as appellees' insurance exposure, satisfied this jurisdictional requirement. *See, e.g., Bankers Life & Casualty Co. v. Namie,* 341 F.2d 187 (5th Cir.1965). Second, we note that any defective jurisdictional allegations of diversity in a removal petition may be cured by amendment, even as late as an appeal. *See, e.g., Harris v. Edward Hyman Co.,* 664 F.2d 943, 945 n. 4 (5th Cir.1981); *Firemen's Insurance Co. v. Robbins Coal Co.,* 288 F.2d 349, 350 (5th Cir.), cert. denied, 368 U.S. 875, 82 S.Ct. 122, 7 L.Ed.2d 77 (1961) (applying 28 U.S.C. § 1653). *See also* Fed.R. Civ.P. 15(c) (relation back of amendments). In the immediate case, Global's subsequent motion to join in removal, which set out its princi-

## II. *Liability*

Appellant argues that the district court erred in its findings that neither Global nor Unionmutual were liable for his disability claim. Appellant contends that the district court erred in freeing Global of liability by concluding that Global's representative did not represent that appellant was covered by the disability policy on the day he began work. As to Unionmutual, appellant argues that the district court erred in concluding that the abstract of coverage, prepared by Unionmutual and provided appellant at the time of his pre-employment interview, was not deficient in its failure to set out the waiting period provision contained in the disability policy. We uphold the decision of the district court freeing Global and Unionmutual from liability to appellant under the insurance claim made in this case.

### A. *Global*

■ At the hearing below, conflicting evidence was presented as to whether representations of coverage were made to appellant at the pre-employment interview. Appellant testified that the Global representative who interviewed him for employment made affirmative representations of immediate coverage under the Unionmutual policy. The Global representative who interviewed appellant denied making any such representations. The district court concluded that appellant failed to carry his burden of establishing that such verbal representations were in fact made.

The trial court's factual determination of what transpired at the pre-employment interview may not be set aside unless clearly erroneous. "[O]n the entire evidence [we must be] left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see McKenzie v. Unit-*

*ed States,* 678 F.2d 571, 574 (5th Cir.1982); *Reyes v. Vantage Steamship Co.,* 672 F.2d 556, 557 (5th Cir.1982); *New Orleans v. American Commercial Lines, Inc.,* 662 F.2d 1121, 1123 (5th Cir.1981); Fed.R.Civ.P. 52(a). Especially where, as here, the factual determination is made by resolving conflicts in the evidence, requiring that essential credibility determinations be made, this Court will defer to the trier of fact. *Clark v. Mobil Oil Corp.,* 693 F.2d 500, 501 (5th Cir.1982); *New Orleans v. American Commercial Lines, Inc., supra,* 662 F.2d at 1123. We have examined the entire record with the above principles in mind. We find that the district court has not clearly erred in concluding on conflicting evidence that Global's interviewer did not represent to appellant that he would be covered under the Unionmutual disability policy on the day he began his employment. Accordingly, we affirm the district court's judgment as to defendant Global.

### B. *Unionmutual*

■ The more serious question posed in this appeal is the issue of whether appellant was adequately informed by the certificate of insurance prepared by Unionmutual and handed to him as a new employee on the first day of employment by Global since it did not inform him that his disability insurance did not begin until after the end of the month he was employed. Under Louisiana law, an insurer may not rely upon a substantial limitation contained in a policy if that limitation is not sufficiently set out in any certificate or abstract of insurance required by statute to be furnished applicant. The furnished certificate must not be misleading. *Lombard v. Manchester Life Insurance Co.,* 406 So.2d 742, 744 (La.App. 1981), *writ denied,* 410 So.2d 764 (La.1982); *Davey v. Louisiana Health Service & Indemnity Co.,* 357 So.2d 1170, 1174 (La.Ct. App.), *writ denied,* 359 So.2d 194 (La.1978); *Colvin v. Louisiana Hospital Service, Inc.,*

---

pal place of business for diversity purposes, cured any defect in jurisdictional allegations in the original petition.

Finally, we note that appellant's vague argument that Global somehow waived its right to

join in the removal petition, is wholly without merit in light of all parties having acknowledged federal jurisdiction once the matter was removed from state court.

321 So.2d 416, 418 (La.App.), *writ denied,* 323 So.2d 476 (La.1975). In the immediate case, therefore, Unionmutual would be barred from relying upon the waiting period contained in the policy, which concededly precluded appellant's claim, if the certificate of insurance was inadequate in not specifically disclosing that provision.

While the certificate did not state in terms the fact that there was a waiting period before new employees were covered, it did contain the following provision:

GENERAL INFORMATION

This statement of coverage describes the essential features of this insurance plan in general terms. All terms and conditions governing this insurance plan are those set forth in the policy underwritten by Unionmutual Stock Life Insurance Co. of America, Portland, Maine, including eligibility and effective dates of individual insurance. *In the event that you are not actively at work due to a disability resulting from sickness or injury, insurance shall not become effective until you have completed one day of active work in your eligible class.* (Emphasis in original).

■ The adequacy of this certificate is to be determined under Louisiana law. Two provisions of the Louisiana law have possible relevance. One of them, La.Rev.Stat. Ann. § 22:215 A(3), has a restrictive application and a stringent requirement.[8] The provision's requirements are limited to blanket insurance policies issued to "special groups of persons," as enumerated in that section. The only provision of possible relevance is that covering employees "defined by reference to exceptional hazards incident to such employment." La.Rev.Stat.Ann. § 22:215 A(3)(b). Certificates of insurance must be provided for delivery to the insured employee, and must "disclose the benefits, limitations, exclusions and reductions contained in the policy ... and any other relevant information." La.Rev.Stat.Ann. § 22:215 A(3)(g) (West Supp.1983).

The other provision, La.Rev.Stat.Ann. § 22:215 A(1),[9] simply provides for group

---

**8.** La.Rev.Stat.Ann. § 22:215 A(3) provides:

(3) Blanket health and accident insurance is any policy covering special groups of persons as enumerated in one of the following paragraphs (a) through (f):

(a) Under a policy or contract issued to any common carrier, which shall be deemed the policyholder, covering a group defined as all persons who may become passengers on such common carrier.

(b) Under a policy issued to an employer, who shall be deemed the policyholder, covering any group of employees defined by reference to exceptional hazards incident to such employment.

(c) Under a policy issued to a college, school, or other institution of learning or to the head or principal thereof, who or which shall be deemed the policyholder, covering students or teachers.

(d) Under a policy issued in the name of any volunteer fire department, first aid, or other such volunteer group, which shall be deemed the policyholder, covering all of the members of such department or group.

(e) Under a policy or contract issued to a creditor who shall be deemed the policyholder to insure debtors of the creditor.

(f) Under a policy issued to any other substantially similar group which, in the discretion of the commissioner of insurance, may be subject to the issuance of a blanket health and accident policy.

Subsection (g), which follows and is limited to the above-quoted provisions, sets out certain requirements for issuers of "blanket policy" insurance, including that of issuing a certificate of insurance as follows:

(g) An individual application shall not be required from a person covered under such a blanket policy. *The insurer shall furnish to the policyholder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to notice of claim, proof of loss, time of payment of claim and any other relevant information, including the name and address of the insurer.* All benefits under any such blanket policy shall be payable to the person insured, or to his designated beneficiary or beneficiaries, if the policy permits the designation of named beneficiaries, or to his estate, except that if the person insured be a minor such benefits may be made payable to his parent, guardian, or other person actually supporting him. (Emphasis added). La.Rev.Stat.Ann. § 22:215 A(3)(g) (West Supp. 1983).

**9.** Subsection 1(a) provided at the time this injury arose:

(1) Group health and accident insurance is any policy of health and accident insurance covering more than one person, except fami-

employee health and disability benefits and only requires that these certificates "contain[ ] a statement as to the insurance protection to which [the insured] is entitled and to whom payable."

■ The district court in its decision assumed that the more stringent requirement of Section 22:215 A(3) applied but nevertheless concluded that the certificate met the requirements. On the other hand, it is our conclusion that this provision does not apply to the insurance policy at issue. The policy does not define covered employees "by reference to exceptional hazards incident to such employment," La.Rev.Stat.Ann. § 22:215 A(3)(b). Rather, the policy covers all "full-time, active administrative, clerical, professional, technical, supervisory, and maintenance employees." Since covered employees are defined generically, rather than by "reference to exceptional hazards," the limited and more exacting provision has no application. *See Davey v. Louisiana Health Service & Indemnity Co.,* 357 So.2d 1170 (La.App.), *writ denied,* 359 So.2d 194 (La.1978) (on rehearing). Therefore, the more general provisions for group employee

disability policies apply. La.Rev.Stat.Ann. § 22:215 A(1).

■ Under Louisiana law, it is clear that the certificate prepared by Unionmutual and handed to appellant by Global met the requirements of this section. Louisiana law recognizes that these requirements are far less stringent than those in Section 22:215 A(3)(g) discussed above. The Louisiana court, on rehearing in *Davey v. Louisiana Health Service & Indemnity Co., supra,* recognized that the specific certificate of insurance inclusion requirements of Section 22:215 A(3)(g) were applicable only to the limited number of "special groups" enumerated in the preceding subsections.[10] Initially, the Louisiana court had erroneously applied this subsection and concluded that the certificate of insurance provided plaintiff therein was "insufficient and, perhaps, misleading." 357 So.2d at 1174. On rehearing, the court acknowledged that it was "mistaken" in applying this subsection, and found that the applicable, more general, statutory provision was subsection A(1)(a), of Section 22:215.[11]

ly group, blanket, and franchise policies hereinafter specifically provided for, which shall conform to the following requirements:

(a) The policy shall be issued to an employer or association, or trustees of a fund established by an employer or association, who shall be deemed the policyholder, covering with or without their dependents or family members not less than ten employees of such employer, nor less than twenty-five members or employees of members of such association, for the benefit of persons other than the employer, or the association, its officers or trustees, upon some plan which will preclude individual selection. The premium may be paid by the employer or association, by the employees or members, or by the two parties jointly. If the entire premium is not paid by the employer or association, the group shall comprise not less than fifty per cent of all employees or members, or not less than fifty percent of the class or classes of employees or members eligible. If the policy is issued to any employer, any class or classes of employees eligible for coverage must be determined by conditions pertaining to their employment or age. No such policy may be issued to an association unless such association has a constitution and by-laws and has been organized and is maintained in good faith for purposes other than

those of obtaining insurance. *The insurer shall issue to the employer or association for delivery to each employee or member insured under such group policy, an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable.* The policy may be issued to the trustees of a fund established by two or more employers in the same industry or by one or more labor unions, or by one or more employers and one or more labor unions, which trustees shall be deemed the policyholder, to insure with or without their dependents or family members, employees of the employers or members of the unions for the benefit of persons other than the employers or the unions.

La.Rev.Stat.Ann. § 22:215 A(1)(a) (West 1959) (emphasis added). This subsection was subsequently amended, in 1980, in minor detail not relevant to the immediate dispute. *See id.* (West Supp.1983).

**10.** These subsections, (a)–(f), are quoted in footnote 8 *supra.*

**11.** *See* note 9 *supra.* In *Davey,* the court found on the facts of that case that even under § 22:215 A(1)(a) the certificate was inadequate in setting out limitations upon surgical procedures available to employees.

In the case before us, the certificate itself referred to the fact that there were exceptions which were not included in the certificate. The provision specifically stated that the "essential features of this insurance plan [are described] in general terms" and referred beneficiaries to the policy to determine the governing "terms and conditions", and we stress, "*including eligibility and effective dates of individual insurance.*" This provision, together with the basic language of the statute,[12] makes clear that the Unionmutual certificate adequately informed appellant there were exceptions in the policy and of the possibility that he might be excepted.

*Davey v. Louisiana Health Service & Indemnity Co., supra,* which held that the certificate of insurance at issue did not meet even the looser standard of subsection A(1)(a), is factually distinguishable. In *Davey,* the certificate of insurance specifically undertook to define in detail the benefits provided an employee and the specific exemptions from coverage. The court concluded that these specific, and purportedly exhaustive, provisions were "perhaps misleading"[13] and, as it concluded on rehearing, that the plaintiff could not "reasonably expect" from these provisions in the certificate that her oral surgery might not be covered.[14] Even under the compelling facts of that case, the *Davey* court characterized its conclusion on rehearing as a "close call."

In the immediate case, the certificate of insurance neither purports to be nor can reasonably be interpreted as exhaustive of all exemptions provided for in the policy. Rather the certificate explicitly provides that the terms and conditions for eligibility and "effective dates of individual insurance" are contained in the policy and that the certificate does not set out all such provisions. The mere fact that the certificate highlights one important and detailed exemption,[15] does not rise to the status of a

The only subsequent case our research discloses in the possible application of § 22:215 is that of *Lombard v. Manchester Life Insurance Co.,* 406 So.2d 742 (La.App.1981), *writ denied,* 410 So.2d 764 (La.1982), which considered subsection (3)(g) applicable. This case does not affect our determination herein, as the policy at issue in *Lombard* was a student accident insurance policy, which is specifically provided for in subsection (3)(c) and thus subject to the explicit certificate inclusion provisions of subsection (3)(g). *See* note 8 *supra.* Even were we to consider this case, we find that *Lombard,* like *Davey,* is factually distinguishable. The certificate of insurance in *Lombard failed to mention* a claim limitation period set out in the policy, whereas in the immediate case the waiting period *was referenced,* although not explicated. The *Lombard* deletion was, therefore, more significant. *See also Colvin v. Louisiana Hospital Service, Inc.,* 321 So.2d 416 (La.App.), *writ denied,* 323 So.2d 476 (La.1975) (certificate was devoid of any reference to coordination of benefits rider in master policy, and was thus insufficient).

12. Had the Louisiana legislature intended to exact from all insurers the stricter requirements it placed upon a "special group" of insurers it could easily have done so. Indeed, subsection (3)(g) was amended in 1972 to include the certificate inclusion requirements relevant to this appeal; previously, the section had not required that *any* certificate be issued to individuals falling within the enumerated subsections (a)–(f). *See* La.Rev.Stat.Ann. § 22:215(3)(g) (West 1959 & Supp.1983). When, in 1980, the Louisiana legislature amended subsection (1)(a), in other respects, it could easily have included within that section, *if it had so intended,* the specific inclusion requirements that it had exacted by its 1972 amendment to subsection (3)(g). However, it did not do so.

13. This conclusion appears in the court's original opinion which had applied, erroneously, § 22:215 A(3)(g). As we read the court's brief opinion on rehearing, applying the appropriate § 22:215 A(1)(a), the court did not retract its interpretative conclusion that the certificate of insurance at issue was misleading.

14. The court also noted that a special statute, La.Rev.Stat.Ann. § 22:213.1 (West Supp.1977) which "sought to prevent the refusal of insurance companies to pay claims for surgical procedures by dentists," was enacted in 1974. The court concluded, however, that since plaintiff was covered under the policy at issue on July 1973, the specific legislative enactment could not be applied.

15. The "general information" provision in the certificate of insurance, set out in the text *infra* and at issue herein, concludes by emphasizing one particular important exemption from coverage, *i.e.* for those not actively at work due to a disability resulting from sickness or injury.

misleading statement of coverage.[16] Under the facts of the immediate case, we are confident that the Louisiana courts would find the general certificate requirement of § 22:215 A(1)(a) adequately met by the certificate provision at issue herein. We thus conclude, that Unionmutual complied with La.Rev.Stat.Ann. § 22:215 A(1)(a) and therefore was entitled to rely upon the waiting period exemption in its policy. Accordingly, we affirm the district court's judgment rendered in favor of Unionmutual.[17]

### III. CONCLUSION

The district court did not err in denying appellant's motion to remand the case to the state court. Nor did it err in concluding that neither Global nor Unionmutual were liable to appellant on his disability claim.

AFFIRMED.

---

16. The district court below reached this factual conclusion in determining whether a "significant omission" was made in applying, erroneously, subsection (3)(g).

17. We find that remand to the district court for consideration and application of the appropriate section of Louisiana law is unnecessary. While we find that the district court erroneously applied § 22:215 A(3)(g), its findings of fact in that undertaking are relevant to and controlling of a proper consideration of the case under § 22:215 A(1)(a). The district court found that

the certificate of insurance was sufficient under the more stringent inclusion requirements of subsection (3)(g). Since the inquiry under the less exacting subsection (1)(a) differs only in degree, and *not in kind,* remand is unnecessary, *cf. Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979) (where inquiry required under appropriate legal standard differs in kind from that applied by district court, appellate court may not supply missing factual findings and must remand).