473 So.2d 918 (1985)
Dorothy FAGEN, Widow of Eugene A. Tuttle
v.
NATIONAL HOME LIFE ASSURANCE COMPANY.
No. CA-3179.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 1985.
Rehearing Denied August 27, 1985.
*919 Charles J. Ferrara, Metairie, for plaintiff-appellee.
Joseph F. Lahatte, Jr., Berrigan, Danielson, Litchfield, Olsen & Schonekas, New Orleans, for defendant-appellant.
Before BARRY, CIACCIO and WILLIAMS, JJ.
BARRY, Judge.
The defendant insurance company appeals a judgment awarding plaintiff beneficiary the proceeds of a $20,000 life insurance policy upon which it had denied payment.
Plaintiff's husband, Eugene Tuttle, a fisherman and repairman, purchased a group life insurance policy from defendant on June 6, 1981. Mr. Tuttle died on June 13, 1981 apparently from a heart attack. Mrs. Tuttle filed a death claim which defendant denied on the basis that Mr. Tuttle falsely answered application questions concerning high blood pressure.
The pertinent questions which were answered "no" by the decedent are:
Question # 1
Ever been treated for or told by competent authority that you had heart, high blood pressure, stroke or lung troubles?
Question # 2
Ever had any illness, surgical operation, injury, or disability treated by a physician or other practitioner in the last 3 years or ever used or now use narcotic or hallucinogenic drugs, unless administered on the advice of a physician?
Plaintiff testified that her husband filled out the insurance application and she was unaware of its contents. She stated he saw Dr. Thomas O'Quinn in 1978 because he was overweight. He lost the excess weight and kept the pounds off. She conceded he was taking medication at the time of his death but did not know its name.
Dr. O'Quinn testified that on February 27, 1978 Mr. Tuttle went to him primarily for a weight problem and he found 164/100 blood pressure. On March 13, 1978 the pressure was 144/96, but by April 11, 1978 and on subsequent visits it was normal. Mr. Tuttle last saw Dr. O'Quinn on February 5, 1979 when he prescribed Aldomet for the blood pressure and Vitamin E for metabolism and cholesterol control.
Mrs. Pat Chrupchla, manager of defendant's underwriting department, acknowledged if Dr. O'Quinn had told her (as he did Mr. Tuttle) that reducing weight would keep blood pressure normal, she would probably conclude she did not have high blood pressure. She said she did not know whether being overweight would constitute an illness or disability under question 2.
Mrs. Chrupchla stated that the answers on the application eliminated an investigation on the decedent's health. She testified that if one of the health questions had been answered affirmatively, the insurer would not have issued the policy without an investigation. If a policy had been issued, it would have been for a higher premium. She admitted that the insurance claims examiner who was privy to the medical information recommended the company pay the claim.
At trial plaintiff's counsel stressed that Mr. Tuttle, after answering "no" to the two questions, then listed Dr. O'Quinn as his *920 physician, an indication he was not hiding anything. We note there is testimony by the underwriter relating to the insurance company's definition of hypertension as being blood pressure which is more or less premanently elevated. Mr. Tuttle's pressure was high on two occasions in 1978 and normal thereafter.
Defendant's denial of the claim is based on La.R.S. 22:619 B which provides:
In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
For an insurer to successfully urge R.S. 22:619 B it must establish that the false statement(s) concerned facts material to the risk and were made with an actual intent to deceive. Coleman v. Occidental Life Insurance Company of North Carolina, 418 So.2d 645 (La.1982); Henry v. State Farm Mutual Automobile Insurance Company, 465 So.2d 276 (La.App. 3rd Cir.1985). The test of materiality involves a consideration of whether knowledge of the facts would have influenced the insurer in its determination of whether to assume the risk or in fixing the applicable premiums. Green v. Pilot Life Insurance Company, 450 So.2d 406 (La.App. 3rd Cir.1984)
Strict proof of fraud is not required to show the intent which must be determined from the attending circumstances. Watson v. Life Insurance Company of Louisiana, 335 So.2d 518 (La.App. 1st Cir. 1976). "Intent to deceive may involve either knowledge of falsity of the statement and its materiality to the risk or circumstances in which an insured must have known the statement to be material to the risk." Parfait v. Minnesota Mutual Life Insurance Company, 311 So.2d 558, 560 (La.App. 4th Cir.1975), writ refused, 313 So.2d 847 (1975).
Defendant's reliance upon Parfait v. Minnesota Mutual Life Insurance Company, supra, and Topps v. Universal Life Insurance Company, 396 So.2d 394 (La. App. 1st Cir.1981) is misplaced because both are factually distinguishable.
Mr. Tuttle's blood pressure was normal from April 11, 1978 until he purchased the policy on June 6, 1981. The trial court concluded there was a misrepresentation by Mr. Tuttle, but it was not made with the intent to deceive or materially affect the risk undertaken by the insurance company.
Appellate courts give great weight to conclusions of the trier of fact and will not disturb reasonable evaluations of credibility and inferences of fact absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
We find no manifest error in the conclusion that the insurer did not meet its burden of proving Mr. Tuttle's intent to deceive or to materially affect the risk of his insurability.
Judgment is affirmed.
AFFIRMED.