**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-4541
Summary Calendar

_____

Marla Wohlman,

Plaintiff-Counter
Defendant-Appellant,

VERSUS

Paul Revere Life Insurance Company,

Defendant-Counter
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(90 CV 721)
_____
(November 23, 1992)

Before JOLLY, DUHÉ, BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Appellant, Dr. Marla Wohlman, appeals the district court's judgment in favor of Paul Revere Insurance Company, Appellee, holding that Wohlman's disability income insurance policy with the Appellee was void <u>ab initio</u> as a result of misrepresentations made in her application for the policy. Additionally, the court rendered judgment against Wohlman requiring her to reimburse Paul

[1] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Revere $11,233.24 it had paid her in benefits, and costs. We find no error and affirm.

## Background

The following facts were found by the district court. In April 1987, Dr. Wohlman applied for disability income insurance with Paul Revere. At the time she was married to Dr. W. Zeichner, who had previously purchased a disability income policy from Paul Revere and encouraged Dr. Wohlman to do the same. In completing the application, Dr. Wohlman was asked if she had ever used "stimulants, hallucinogens, narcotics or any controlled substance other than prescribed by a physician, or been counseled or treated for excess use of alcohol or drugs?" Dr. Wohlman answered "no", even though she had previously experimented with marijuana, cocaine, and ecstacy. Dr. Wohlman, however, had never been counseled or treated for the excess use of drugs or alcohol. She claims that all prior drug use had ceased almost two years prior to the date of the application.

The insurance agent did not explain to Dr. Wohlman that previous drug use would result in rejection of her application. Dr. Wohlman claims that she did not realize that her policy would be rejected and answered "no" because she felt the question violated her privacy. She felt that her prior experimental drug use was of no significance with respect to her application for disability income insurance.

Paul Revere bases much of its case on the testimony of Dr. Zeichner, now divorced from Dr. Wohlman, and statements Dr. Wohlman made to physicians two years after applying for the policy. Dr. Zeichner testified that Dr. Wohlman told him of drug use prior to their marriage and that he has personal knowledge of her smoking marijuana and using cocaine, and purchasing and consuming an illegal drug commonly referred to as "ecstacy." Dr. Zeichner testified that his personal knowledge of Dr. Wohlman's drug use predated her entry into medical school in 1980 and continued until they moved to Shreveport, Louisiana, in 1985. Dr. Wohlman and Dr. Zeichner were divorced in 1988.

Paul Revere also relies on medical records from drug rehabilitation centers in which Dr. Wohlman was a patient after her application for insurance. On February 26, 1989, Dr. Wohlman became disabled as defined in the policy when she put her left forearm through a window in her home while hallucinating under the influence of alcohol and other drugs. The Shreveport police arrested her for possession of cocaine and transported her to the LSU Medical Center where she was treated for her injury. While receiving treatment, Dr. Wohlman told the treating physician that she had not used any cocaine that day and that her previous use had been approximately a week earlier. As a result of the police charges, Dr. Wohlman was suspended from the LSU residency program and her license to practice medicine was suspended.

In order to be reinstated into the LSU surgical residency program and regain her medical license, Dr. Wohlman was required to

3

enter an in-patient drug abuse treatment program, submit to urinalysis drug screening and undergo psychiatric treatment. She admitted herself into the Jackson Recovery Center in Mississippi in March 1989. She told the physician there that she had abused cocaine approximately 10 times between the ages of 17 and 30, and had abused marijuana and hashish infrequently. She also admitted to once using ecstacy and to periodically using Halcion to help her sleep. She indicated on a drug questionnaire that her last use of cocaine was on February 26, 1989.[2] Doctors at that facility diagnosed chemical dependency, however, Dr. Wohlman discharged herself without completing the treatment program.

In April 1989, Dr. Wohlman met with a Paul Revere field representative concerning her disability. She told the representative that she had tried marijuana once in high school and cocaine once in college, but was too busy working to do drugs and alcohol.

In June 1989, she was evaluated by Dr. A. Singdahlsen, a psychiatrist in Shreveport. In September 1989, Dr. Wohlman was admitted to Timberlawn Psychiatric Hospital in Dallas for referral to Timberlawn's health professionals program for evaluation of possible substance abuse disorder. Once again, Dr. Wohlman described her past drug use differently to both of these professionals.

---

[2] February 26 was the date of her accident in which she denied using cocaine to the treating physician.

Dr. Singdahlsen treated Wohlman through May 1990, when Dr. Wohlman informed Dr. Singdahlsen that she was doing well and had no depression.  At Dr. Wohlman's request, Dr. Singdahlsen certified to the Louisiana Board of Medical Examiners on October 12, 1989, that Wohlman was competent to practice medicine and surgery.

On December 14, 1989, Paul Revere reviewed Timberlawn Psychiatric Hospital medical records and determined that, had Paul Revere known at the time of the application of Dr. Wohlman's prior cocaine use, Paul Revere would not have issued a disability income insurance policy to her.  In December, Paul Revere notified Dr. Wohlman that her policy was being rescinded and tendered her a refund of $1,117.66 for previously paid premiums.  At that time, Paul Revere had paid a total of $11,233.34 in disability benefits.

## Discussion

Dr. Wohlman admits that she lied in applying for her policy when answering the question concerning prior drug use.  Paul Revere contends that this false statement is sufficient to bar recovery under the policy.

Because plaintiff's intent to deceive and understanding of the materiality of her misrepresentation to Paul Revere are both fact findings, Fed R. Civ. P. 52(a) determines that the clear error standard of review applies.  "[E]specially where, as here, the factual determination is made by resolving conflicts in the evidence, requiring that essential credibility determinations be made, this Court will defer to the trier of fact."  Fontenot v. Global Marine, Inc., 703 F.2d 867, 872 (5th Cir. 1983).  Finally,

5

"[t]he burden of showing that the findings are clearly erroneous . . . is on the party attacking them." Seaton v. Sills, 403 F.2d 710, 711 (5th Cir. 1968); see also Terrell v. Geldstein Co., Inc., 468 F.2d 910, 911 (5th Cir. 1972).

Under La. Rev. Stat. 22:619, an insurance company cannot avoid liability under the policy solely as a result of a false statement given by the insured in an application for insurance.

The statute requires not only that the insurance company prove that the statement was false, but also that the false statement was made with the intent to deceive and that such statement materially affected the acceptance of the risk by the insurer or the hazard assumed. Coleman v. Occidental Life Insurance Co. of N. C., 418 So.2d 645, 646 (La. 1982); Clark v. Golden Rule Ins. Co., 887 F.2d 1276, 1281 (5th Cir. 1989). The burden of proof rests with the insurer. Coleman, 418 So.2d at 646.

"Intent to deceive may involve either knowledge of the falsity of the statement and its materiality to the risk or circumstances in which an insured must have known the statement to be material to the risk." Parfait v. Minnesota Mutual Life Ins. Co., 311 So.2d 558, 560 (La. App. 4th Cir. 1975), writ ref'd. 313 So.2d 847 (1975); see also Cousin v. Page, 372 So.2d 1231, 1233 (La. 1979). Absent direct proof, the insurance company may prove that the insured had the actual intent to deceive by showing that there were facts and circumstances surrounding the application process "indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the

6

materiality of his misrepresentations or from circumstances which create a reasonable assumption that the insured recognized the materiality." Cousin, 372 So.2d at 1233; see also Ned v. Magnolia Life Ins., 590 So.2d 733, 735 (La. App. 3d Cir. 1991).

The test of materiality involves considering whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing the applicable premium. Fagen v. National Home Life Assurance Co., 473 So.2d 918, 920 (La. App. 4th Cir. 1985); Jones v. United Savings Life Ins. Co., 486 So.2d 1110, 1113 (La. App. 2d Cir. 1986). If the information given by the applicant is false, but the insurance company would have issued the policy anyway, then it is not material. Jamshidi v. Shelter Mutual Ins. Co., 471 So.2d 1141, 1143 (La. App. 3d Cir. 1985); Manzella v. Paul Revere Life Ins. Co., 872 F.2d 96 (5th Cir. 1989).

Dr. Wohlman argues that she did not realize the materiality of the false statements she made nor did she have the actual intent to deceive Paul Revere. We disagree. We find that there was ample evidence to support the conclusions of the trial court.

Dr. Wohlman's preapplication drug use alone would have materially affected Paul Revere's decision to write the policy. Paul Revere presented evidence, unrefuted by Wohlman, that had it known of her preapplication drug use it would not have issued the policy. Dr. Wohlman understood that each question asked in the application was material to Paul Revere. She knew when she filled out the application that she could explain any negative answer

7

given to a question, but she chose not to do so.  Dr. Wohlman also admitted that, unless she told the Paul Revere representative about her prior drug use, nothing on the application would alert Paul Revere to her previous drug use.  We find no error in the trial courts holding that Dr. Wohlman's prior cocaine use would have materially effected Paul Revere's decision to issue the policy.

Dr. Wohlman's intent to deceive is amply supported by her recognition of the materiality of her misrepresentation regarding her pre-application drug use.  She understood that Paul Revere wanted to know if her drug use was material or significant enough to affect her insurability, but she chose to deny Paul Revere this opportunity.  Additionally, the trial court, in assessing the credibility of Dr. Wohlman's testimony, did not believe that her prior drug use was as limited as she claimed.  The factual determinations made by resolving conflicts in the evidence required that essential credibility determinations be made, therefore this Court must defer to the conclusions of the trial court.  Fontenot, 703 F.2d at 872.  We believe that the circumstances created a reasonable assumption that the insured recognized the materiality of her misrepresentations.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

8