## THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK

v.

Gary WATTS, D.C.

No. Civ.A. 00CV3245.

United States District Court, E.D. Louisiana.

Oct. 17, 2001.

Covert J. Geary, Joseph S. Piacun, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Place St. Charles, New Orleans, LA, for United States Life Insurance Company in the City of New York, plaintiff.

Daniel Clay Wirtz, Brown, Erskine, Burkett & Breithaupt, LLP, Monroe, LA, for Gary Watts, D.C., defendant.

### *ORDER AND REASONS*

LEMMON, District Judge.

Plaintiff United States Life Insurance Company in the City of New York has filed a motion for summary judgment (Document 18). **IT IS HEREBY ORDERED** that U.S. Life's motion is **GRANTED.**

## A. Factual background.

U.S. Life filed this action for a declaratory judgment, seeking summary judgment that defendant Dr. Gary Watts is not entitled to disability benefits under a Certificate U.S. Life issued to him effective June 1, 1998. The motion also asks for summary judgment on Watts' counterclaim, which seeks disability benefits purportedly owed to him under the Certificate.

Watts worked as a chiropractor in his own clinic for many years. In 1997 he began experiencing pain and numbness in his hands, in addition to back, neck, and knee pain.[1] Watts placed an advertisement in the February 1998 edition of the Journal of the American Chiropractic Association attempting to sell his practice due to "poor health." Dr. Michael Brantmeier responded to the advertisement, and began negotiating with Watts to buy the business.

On March 16, 1998, while still negotiating with Dr. Brantmeier, Watts filled out an application for disability coverage from U.S. Life. One of the questions on the application was:

2. HAVE YOU EVER HAD OR BEEN TREATED FOR: (Circle specific disorders experienced.)

\* \* \* \* \* \*

b. Injury, pain or disorder of neck or back? Sciatica? Any disabling injury?

(capitalization in original). Watts checked the box for "no."

On May 15, 1998, Watts saw Dr. Thomas Krefft. The notes of this visit reflect that Watts complained of "neck pain," and had bilateral pain in his upper and lower extremities. The notes also show that one week earlier, Dr. Watts had experienced a "shocking" pain down his upper extremities, and a "stabbing pain" over his lower cervical spine. This incident resulted in "numbness almost instantly in both hands." Watts also reported to Dr. Krefft that his neck was "sore + stiff; throbs at end of day." The notes state that Watts had suffered from "bilat CTS .. for a long time," with "numbness" for two to three months. Dr. Krefft diagnosed a herniated cervical disk, lumbar disk syndrome, and bilateral Carpal Tunnel Syndrome.

On May 19, 1998, Watts and Dr. Brantmeier signed a "Bill of Sale" under which Dr. Brantmeier bought Dr. Watts' practice. On that same day, Watts was X-rayed at the Northshore Regional Medical Center. The radiology report from this procedure indicates a "History . . . of neck and back pain . . . ."

U.S. Life later approved Watts' disability application, with an effective date of June 1, 1998. Ten days after his disability coverage began, Watts sought treatment from Dr. Kenneth Adatto at the Louisiana Clinic. On a History Questionnaire, Watts checked the "yes" line for "neck pain," and checked that it was "severe" (writing the words "at times" next to this response). Dr. Adatto's notes from Watts' visit indicate that Watts had "been having wrist and hand pain off and on for about two years." There is no indication of the duration of the neck pain.

On August 26, 1998, Watts submitted a disability claim to U.S. Life, and stated that he was totally disabled due to Carpal Tunnel Syndrome that had begun on June 11, 1998, the day on which Dr. Adatto told Watts that he was disabled due to this condition.

## B. Analysis.

■ The Louisiana Insurance Code provides that a false statement made in an

---

1. *See* Watts deposition at 24–25.

application for insurance may, in certain circumstances, bar recovery under the insurance contract:

B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

LSA–R.S. 22:619 B. Although the statute's language appears to require either an intent to deceive or a material impact on the acceptance of risk, "Louisiana jurisprudence requires both factors." *Coleman v. Occidental Life Ins. Co.*, 418 So.2d 645, 646 (La.1982). As the Fifth Circuit has explained:

The statute requires not only that the insurance company prove that the statement was false, but also that the false statement was made with the intent to deceive and also that such statement materially affected the acceptance of the risk by the insurer or the hazard assumed. The burden of proof rests with the insurer.

"Intent to deceive may involve either knowledge of the falsity of the statement and its materiality to the risk or circumstances in which an insured must have known the statement to be material to the risk." Absent direct proof, the insurance company may prove the insured had the actual intent to deceive by showing that there were facts and circumstances surrounding the application process "indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations or from circumstances which create a reasonable assumption that the insured recognized the materiality."

The test of materiality involves considering whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing the applicable premium. If the information given by the applicant is false, but the insurance company would have issued the policy anyway, then it is not material.

*Wohlman v. Paul Revere Life Ins. Co.*, 980 F.2d 283, 285–86 (5th Cir.1992).[2]

■ The record reflects that Watts made a false statement on his disability application with the intent to deceive U.S. Life. In response to a straightforward question about whether he had ever experienced back pain, neck pain, or any disabling injury, Watts answered "no." Yet, he admitted at his deposition that he had suffered from neck, back, and hand pain at least since 1997, and the medical records from his physicians in May and June of 1998 indicate a history of this sort of pain. Watts—a chiropractor—must have known that his misrepresentation concerning his longstanding neck and back pain would be relevant to U.S. Life's decision whether to provide coverage. Watts must have known that he had to disclose his longstanding pain in his hands as a "disabling" injury, especially considering that at the very time he filled out the disability application he was selling his practice because of this pain.[3]

---

**2.** *Quoting Parfait v. Minnesota Mutual Life Ins. Co.*, 311 So.2d 558, 560 (La.App. 4th Cir.), *writ denied*, 313 So.2d 847 (La.1975)

and *Cousin v. Page*, 372 So.2d 1231, 1233 (La.1979).

**3.** Watts deposition at 24.

Watts' only argument concerning why he did not need to disclose his neck, back, or hand pain is that the application's question is "poorly worded," and that had he actually been "treated" for injury or pain in his neck, back, or hands, he would have disclosed any such treatment. This argument is specious, for question 2 b. clearly and unambiguously asks about whether he ever "had or been treated for ... [i]njury, pain or disorder of the neck or back ...." Further, his argument is belied by his deposition testimony:

Q: Before Dr. Kref[f]t, did you ever seek treatment for any pain in your neck?

A: Active treatment or just an adjustment now and then for stiffness?

Q: Either way.

A: Yeah, I guess. I had chiropractors, you know, adjust me off and on over the years, you know.

Q: Okay. How about when was the last time before—prior to Dr. Kref[f]t, when was the most recent time that you visited a chiropractor? Received treatment from a chiropractor?

A: Probably months.[4]

The next issue is whether Watts' false statement materially affected U.S. Life's acceptance of his risk. Attached as Exhibit "G" to U.S. Life's motion is the affidavit of Wesley Jarvis, its Director of Underwriting. Jarvis avers that "Watts' misrepresentations regarding his medical condition, i.e., his hand, back and neck pain, were material to the risk assumed by U.S. Life," and therefore "Had this information been disclosed in the application, the application would have been declined based upon U.S. Life's underwriting guidelines." Watts offers nothing to controvert this af-

fidavit. Clearly, the false statement materially affected U.S. Life's acceptance of his application.

In sum, the undisputed material facts of this case demonstrate that Watts made a false statement in his disability application with the intent to deceive U.S. Life, and that Watts' false statement materially affected U.S. Life's acceptance of risk. U.S. Life is therefore entitled to judgment as a matter of law on both its principal demand and Watts' counterclaim.[5]

---

4. Watts deposition at 87–88.

5. Because the court grants summary judgment to U.S. Life due to Watts' false statement, it need not reach the issue of whether

he was "actively at work" when coverage began or whether he was "under the regular care of a physician," both of which are required conditions of coverage in the Certificate.